IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Caroline Perry, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>McLeod Healthcare Network, LLC,<br><br>Defendant. | Civil Action No. 4:22-cv-00061-JD<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF FLSA COLLECTIVE ACTION** |

Plaintiff Caroline Perry ("Perry" or "Named Plaintiff"), on behalf of herself and the Opt-In Plaintiffs ("Opt-In Plaintiffs") (collectively with Perry, the "Plaintiffs"), hereby submits this Memorandum in Support of Plaintiffs' Unopposed Motion for Approval of Settlement of FLSA Collective Action, requesting that the Court approve the Parties' Final Settlement Agreement and Release (the "Settlement Agreement"). (Ex. 1 – Settlement Agreement.)

## PROCEDURAL BACKGROUND

The Named Plaintiff initially filed this action, on behalf of herself and others similarly situated, alleging that Defendant's automatic meal period deduction policy resulted in Defendant's failure to pay them overtime wages as required by the Fair Labor Standards Act ("FLSA") and other wages under the South Carolina Payment of Wages Act ("SCPWA").[1] (ECF No. 1.)

On February 21, 2022, Defendant filed a Motion to Dismiss Plaintiff's second cause of action under the SCPWA (ECF No. 8), as well as an Answer to the remaining allegations in the Complaint. (ECF No. 9.) Plaintiff responded to Defendant's Motion to Dismiss on March 21, 2022.

---

[1] Maya Wilkes was the original named Plaintiff who filed this action, but Caroline Perry has since been substituted as the named Plaintiff in this matter. (ECF No. 104.)

(ECF No. 17.) The Court denied Defendant's Motion to Dismiss Plaintiffs' second cause of action on May 16, 2022. (ECF No. 36.) On April 14, 2022, the Parties stipulated to the conditional certification of a collective group of all hourly employees who worked for McLeod Regional Center of the Pee Dee, Inc., McLeod Loris Seacoast Hospital, McLeod Health Clarendon, McLeod Health Cheraw, McLeod Medical Center – Dillon, McLeod Occupational Health, LLC, and McLeod Physician Associates II, in a patient-facing position at any time within three years prior to May 23, 2022, and who were subject to the automatic meal break pay deduction. (ECF No. 27.) On May 23, 2022, the Court granted the Parties' Joint Motion for Conditional Certification. (ECF No. 37.) At the end of the opt-in period, 441 other current and former employees had opted-in to the action.[2]

The Parties subsequently stipulated to representative discovery on December 12, 2022. (ECF No. 89.) Pursuant to the Parties' representative discovery stipulation, the Parties would conduct discovery on eight (8) randomly selected Opt-In Plaintiffs, eight (8) Opt-In Plaintiffs selected by McLeod, and eight (8) Opt-In Plaintiffs selected by Plaintiffs. *Id*. Thereafter, the Parties engaged in extensive written discovery of all of the Opt-In Plaintiffs designated for representative discovery and Defendant took four depositions, including the deposition of Named Plaintiff Perry.

The Parties participated in mediation with experienced wage and hour mediator Michael Russell, Esq. on July 18, 2023. The Parties achieved a global agreement to settle the action at the

---

[2] There are currently 422 total opt-in's who will participate in the settlement and receive a settlement check. Some of the opt-in's who had previously joined were determined to have no damages within the relevant statute of limitations and some voluntarily opted out during the discovery phase. Additionally, various opt-in's were dismissed with prejudice by the Court. (ECF No. 102.)

mediation and subsequently finalized their formal Settlement Agreement, which is submitted herewith as Exhibit 1 for the Court's consideration and approval.

## SUMMARY OF THE SETTLEMENT

### A.     Summary of Monetary Compensation

In consideration of the releases set forth in the Settlement Agreement, Defendant shall make a Total Settlement Payment in the amount of $600,000.00 (the "Gross Settlement Amount"), to resolve the claims of Plaintiffs in this action. The Gross Settlement Amount consists of Thirteen Thousand Five Hundred Dollars ($13,500.00) in Service Awards to the Plaintiffs who participated in written discovery and/or depositions. The allocation of the service payments is set forth in Exhibit 1-A and described further herein. The Gross Settlement Amount also consists of Two-Hundred Forty Thousand Dollars ($240,000.00) for attorney's fees. The Parties have agreed to use ILYM as the claims administrator responsible for processing the settlement. The claims administrator's fees for settlement administration and the costs of the administration of the initial notice of the case shall be subtracted from the Gross Settlement Amount, along with reasonable expenses and costs of Plaintiffs' counsel.[3] Lastly, the Parties have agreed to set aside and designate Sixty Thousand Dollars ($60,000.00) of the Gross Settlement Amount as a Reserve Fund to satisfy the claims of any individuals who previously received notice of this collective action who may come forward to assert a claim. The remainder of the Gross Settlement Amount following these subtractions is the Net Settlement Fund ("Net Settlement Fund"), which shall be distributed to the Plaintiffs by the claims administrator as further described below.

---

[3] Plaintiffs' counsel's costs are set forth in detail in Exhibit 2-A and total $44,995.90, inclusive of the claims administration fees described above.

### B.    Summary of Releases and Payment Breakdown

In exchange for his or her pro rata settlement amount, each Opt-in Plaintiff will provide Defendant with a limited release of FLSA and state-based wage and hour claims and covenant not to sue in consideration of the Settlement payment pursuant to the Settlement Agreement. The release and covenant not to sue covers such FLSA and state-based wage and hour claims up until the Settlement Effective date.[4] The settlement administrator shall include release language on the back of each check sent to each Plaintiff stating: "I agree to all terms of the Settlement Agreement and Release in *Perry v. McLeod Healthcare Network, LLC*, and waive any right to bring suit for wages under state or federal law as stated therein." Aside from any such Future Claimants, the Settlement covers only those individuals who affirmatively opted to join in this lawsuit by submitting an approved consent form. The Settlement does not resolve or release the claims of individuals who did not affirmatively consent to join the action, excepting any Future Claimants as further described below.

The Net Settlement Fund will be distributed to the Plaintiffs by the claims administrator as follows:

- The claims administrator will calculate the settlement amount for each Plaintiff by dividing the Net Settlement Amount by the total number of automatic meal period deductions taken as to the Collective from January 7, 2019, through the date of execution of the Settlement Agreement (the "Collective Period") to create a "Per Break Value."

$$\frac{Net\ Settlement\ Amount}{Meal\ deductions\ of\ the\ collective} = Per\ Break\ Value$$

---

[4] Paragraph 5 of the Settlement Agreement defines the "Settlement Effective Date" as the date the Court enters an order approving the Settlement Agreement and dismissing the action with prejudice.

- The claims administrator shall then multiply the Per Break Value by the number of automatic meal period deductions taken as to each individual Plaintiff during the Collective Period, to determine each Plaintiff's individual settlement share (the "*Pro Rata* Settlement Amount").

*Per Break Value × Plaintiff's Automatic Deductions Taken = Pro Rata Settlement Amount*

- Exhibit A of the Settlement Agreement includes the number of automatic meal period deductions taken per Plaintiff during the Collective Period, which will be used by the claims administrator to perform the calculations.

Payments to the Plaintiffs, not including any enhancements paid to the Named Plaintiff or other service award recipients, shall be allocated for tax purposes as follows:  (1) 50 percent of the payment to each Plaintiff shall be allocated to wages; and (2) 50 percent of the payment to each Plaintiff shall be allocated to non-wages representing statutory penalties and liquidated damages. The wage portion shall be subject to payroll deductions as required by law, and an IRS Form W-2 will be issued for such amount.[5] The non-wage portion shall be paid without deductions, and an IRS Form 1099 will be issued for such amount.

The above allocation formula is intended to fairly and adequately compensate Plaintiffs based on the number of automatic meal period deductions taken as to each individual during the relevant time period. Those who worked for a longer period of time and had more automatic meal period deductions taken within the relevant time period will receive a larger recovery. Allocated amounts for Plaintiffs who do not negotiate their settlement checks within 90 days after the mailing of the settlement checks by the claims administrator will revert to Defendant.

## C.    Reserve Fund

As part of the settlement agreement, the Parties have also agreed to set aside and designate $60,000.00 of the Gross Settlement Amount as a "Reserve Fund." The purpose of the Reserve

---

[5] All of the employer's share of payroll taxes on the wage portions of the settlement shall be paid by Defendant in addition to the Gross Settlement Fund.

Fund is to provide any individuals who did not previously opt-in to the action, a chance to do so and participate in the Settlement, should they wish to do so. To the extent that any individuals who previously received notice of the collective action, but who did not previously opt-in, come forward to assert a claim ("Future Claimants"), such claims will be satisfied by monies remaining in the Reserve Fund.

## ARGUMENT

Settling parties routinely seek judicial approval of proposed settlements to ensure fairness and to give effect to the release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). The law favors compromise and settlement of lawsuits. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement").

The FLSA, however, "represents a departure from the general public policy favoring voluntary resolution of disputes, which typically permits private parties to settle claims without court approval." *Unger v. Furman Univ.*, No. 6:21-cv-379-TMC, 2021 U.S. Dist. LEXIS 249549, at *4 (D.S.C. Dec. 3, 2021) (quoting *Senior v. Robert Newlin Airport, Inc.*, No. 3:18-1382, 2019 U.S. Dist. LEXIS 152843, at *2 (S.D. W. Va. Sept. 9, 2019)). After all, Congress enacted the FLSA to protect workers from poor wages and long hours that can result from substantial inequalities in bargaining power between employers and employees. *See* S. Rep. No. 884, at 3-4 (1937); H.R. Rep. No. 1452, at 9 (1937). And, in light of this purpose, the FLSA's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).

A Court-approved settlement is the exception to this rule. *See* 29 U.S.C. § 216(b). While the FLSA's provisions are generally not subject to waiver, a district court may approve a settlement if the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Graham*, 2019 U.S. Dist. LEXIS 121615, at *3 (citing *Lynn's Food Stores*, 679 F.2d at 1354). Where, as here, the settlement involves a private enforcement action under Section 216(b) of the FLSA, the standard for approval is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores* 679 F.2d at 1352-54 (citing *Brooklyn Savings Bank*, 324 U.S. 697). Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

To determine whether to approve a proposed settlement, the Court must determine "(1) whether the award reflects a reasonable compromise over the issues in dispute; and (2) whether the proposed award of attorneys' fees and costs is reasonable." *Junious v. FedEx Ground Package Sys., Inc.*, No. 4:19-cv-00381-SAL, 2020 U.S. Dist. LEXIS 107023, 2020 WL 3288170, at *2 (D.S.C. June 18, 2020). "Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of [FLSA] settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Edelen v. Am. Residential Servs.*, 2013 U.S. Dist. LEXIS 102373, at *28 (D. Md. July 22, 2013); *see also Coriminas*, 2016 U.S. Dist. LEXIS 191850, at *2 (same). The analysis from *Lynn's Food Stores* asks whether there is a *bona fide* dispute and whether the proposed settlement is fair and

reasonable. *See Weckesser v. Knight Enters. S.E., LLC*, 402 F. Supp. 3d 302, 305 (D.S.C. 2019) (citing *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *2 (D. Md. 2013)); *see also Corominas v. ACI Holdings, LLC*, No. 2:15-CV-4372-PMD, 2016 U.S. Dist. LEXIS 191850, at *5 (D.S.C. Oct. 27, 2016) ("Courts generally approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved."). District courts within the Fourth Circuit have also articulated the following factors in determining whether to approve an FLSA settlement: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Weckesser*, 402 F. Supp. 3d at 305 (citing *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 849 (D.S.C. 2016) and *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *10 (E.D. Va. 2009)).

Here, the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. Accordingly, the Parties respectfully request that this Court approve the settlement and implement its terms.

### A.    The Parties Were Engaged in a *Bona Fide* Dispute as to Whether Overtime Pay was Owed.

In determining whether a *bona fide* FLSA dispute exists, "courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Smith v. David's Loft Clinical Programs, Inc.*, 2022 U.S. Dist. LEXIS 198019, at *8 n.2 (D. Md. Oct. 31,

2022) (quoting *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014)). Courts within the Fourth Circuit have found *bona fide* disputes to exist where a defendant denies wrongdoing or asserts an affirmative defense. *Id.* Both of these factors are present here.

To be sure, Plaintiffs alleged that Defendant had routinely failed to pay them overtime wages in violation of the FLSA. Specifically, Plaintiffs alleged that they were regularly required to work through their meal periods even though they were still subjected to deductions from their wages for such meal periods. As a result, Plaintiffs alleged that they were required to work over forty hours per workweek without receiving overtime pay at the rate of one and one half times their regular rates of pay for all of the hours they worked. (ECF No. 1.) Defendant denied and continues to deny the Plaintiffs' allegations both factually and legally, asserting that Plaintiffs were in fact allowed to take *bona fide* meal periods. (ECF No. 9.) Defendant also contended that, in any circumstances in which Plaintiffs were not allowed to take a break, Defendant's policy for reporting missed meal breaks would sufficiently rectify the situation. *Id.* Accordingly, a *bona fide* dispute exists between the Parties in this matter.

## B.    The Proposed Settlement is Fair and Reasonable.

Upon finding the existence of a *bona fide* dispute between the parties, the Court then assesses the proposed settlement agreement for fairness and reasonableness. The settlement in this matter was the product of arm's-length and spirited negotiations by experienced counsel and has the effect of (1) providing Plaintiffs with the opportunity to receive substantial financial remedies for their claims, (2) in exchange for a narrow and limited release of their wage claims, and (3) eliminating the inherent risks both sides would bear if this complex litigation continued. In this matter, Plaintiffs are receiving compensation for each auto-deduction taken out of their wages. When applying these factors here, a presumption of fairness and reasonableness should attach to the settlement.

###### i.    The Proposed Settlement is the Product of Contested Litigation.

Pursuant to *Lynn's Food Stores*, the finding of a settlement that is fair and reasonable is most likely to be satisfied where the settlement is reached in an adversarial context and is the product of contested litigation. *Id.* at 1354. Or as one court in this District put it, "[i]n other words, where there is an assurance of an adversarial context and where [an] employee is represented by an attorney who can protect [his] rights under the statute, [a] settlement will be approved." *Unger*, 2021 U.S. Dist. LEXIS 249549, at *4. Issues in dispute are certainly best determined and fleshed out in the adversarial context and such is the case in the instant matter.

The settlement here is the result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit, which has been litigated for 22 months. In their Complaint, Plaintiffs made detailed factual allegations describing Defendant's allegedly unlawful compensation practices and failure to pay them overtime compensation at the rate of one and one half times their regular rate of pay. (ECF No. 1.) Defendant denied and continues to deny that it violated the FLSA. (ECF No. 9.) As set forth above, the procedural history of this case includes ample motions practice relating to the claims at issue. This motions practice has allowed the Parties to further flesh out the claims asserted by Plaintiffs and the defenses asserted to them by Defendant. Further, by engaging in extensive discovery and exchange of voluminous amounts of records, the Parties had a full opportunity to analyze the pertinent factual and legal issues and to assess the strengths and weaknesses of their respective positions relating to the alleged unlawful compensation practices. The Parties have taken depositions and exchanged thousands of pages of documents in discovery. The Parties are in a position to understand the strengths and weaknesses of their various legal and factual positions and the settlement was reached only after this extensive contested litigation. Accordingly, the Court should conclude that the proposed settlement was the product of contested litigation.

ii.    **The Extent of Discovery and Stage of the Proceedings, Including the Complexity, Expense, and Likely Duration of the Litigation All Support Approval of the Settlement.**

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's defenses. If the action continues, Plaintiffs face many obstacles and uncertainties, including a motion for decertification of the action, a motion for summary judgment, and potentially a jury trial. Furthermore, if Plaintiffs prevail on liability, they face additional hurdles regarding the amount of damages Plaintiffs allegedly suffered. As noted above, the Parties engaged in significant discovery prior to reaching the settlement at issue. Both sides requested and responded to written discovery from each other related to the claims and defenses in the case, including the exchange of thousands of pages of documents. Further, in addition to participating in four depositions, the Parties were actively preparing to take many more depositions just prior to reaching the settlement in this matter. To be sure, Plaintiffs' counsel was set to take a Rule 30(b)(6) deposition on the day following mediation had settlement not been achieved, with many more depositions by both sides to follow. This exchange of significant written discovery and significant time devoted to depositions and deposition preparation has allowed the Parties to "fairly evaluate the liability and financial aspects of the case." *Junious*, 2020 U.S. Dist. LEXIS 107023, at *5. Additionally, in regard to the likely expense and duration of the litigation, had settlement not been achieved and had the Parties instead moved forward with dozens of additional depositions as they had discussed and prepared to take, this would have undoubtedly increased the expense and duration of the litigation. This increased expense, in turn, would have likely made achieving settlement more difficult at a later point in time.

When determining the reasonableness of the settlement award, courts consider a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Morris v. Affinity Health Plan,*

*Inc.* 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (internal citations omitted). Immediate payment of substantial amounts to the Plaintiffs is reasonable "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road." *Mendez v. MCSS Rest Corp.*, 2022 U.S. Dist. LEXIS 154102, at *25 (E.D.N.Y. Aug. 26, 2022). Here, the settlement represents a monetary recovery to Plaintiffs that will be paid within a definitive time frame in an amount derived from the number of meal break deductions taken from each individual Plaintiff's wages. Assuming a two year statute of limitations, the Plaintiffs' unpaid overtime wages equate to approximately $720,959.86. The total amount of the settlement under the Parties' agreement equates to approximately 83.22% of the Plaintiffs' unpaid overtime wages assuming a two year statute of limitation. In Plaintiffs' counsel's assessment, the settlement achieved in this matter is an excellent result for Plaintiffs.

Finally, as explained above, the Plaintiffs are releasing only the wage claims that they brought or could have brought in this case.[6] The limited nature of the release the Plaintiffs are providing Defendant in exchange for a settlement payment is another indicia of a fair and reasonable settlement. *See, e.g., Robinson v. Harrison Transp. Servs., Inc.*, No. 5:15-CV-298-F, 2016 U.S. Dist. LEXIS 86294, at *11 (E.D.N.C. June 30, 2016) (discussing importance of limited releases in FLSA settlements because "an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.") (internal citations omitted).

### iii.    The Action is Complex, Expensive, and Lengthy.

This action is properly characterized as complex, both in terms of establishing liability and in establishing the proper amount of damages for all Plaintiffs. Many complex issues of law and fact remain unanswered and would have to be resolved at or before trial, which would be

---

[6] The few Plaintiffs who will receive a service award will provide Defendant with a full release of all claims in exchange for receipt of their service award. *See infra* § III; Exhibit 1 § 8(b)(v).

lengthy, costly, and complex. Plaintiffs would need to provide evidence sufficient to establish liability and proof of damages that would have required additional discovery, which would have extended the length of the matter and the costs incurred. Defendant has asserted numerous defenses that would, likewise, have required additional discovery and created obstacles for Plaintiffs both at summary judgment and at trial. Defendant was certain to move for decertification at the completion of discovery. Further, regardless of the outcome at trial, post-judgment appeals were likely. Accordingly, the complexity and prospective expense and duration of further litigation weigh in favor of approving the Parties' proposed settlement.

### iv. Plaintiffs and Plaintiffs' Counsel Support the Settlement and There is No Evidence of Fraud or Collusion.

Named Plaintiff Perry and Plaintiffs' counsel in this matter have all indicated their approval of the settlement by signing the settlement agreement. In addition to signing the settlement agreement as the designated representative of the collective group, Named Plaintiff Perry further memorialized her agreement to its terms in her accompanying declaration submitted herewith. (Ex. 4.) Ms. Perry is knowledgeable of the claims asserted in this action and of her role and responsibility as collective representative for the other opt-in's. *Id*. She has been involved in written discovery, sat for a deposition, and has been actively involved in the settlement of this case. *Id.* She believes the settlement is fair and reasonable and was provided specific information relating to the percentage of recovery the settlement class is receiving. *Id.*

Additionally, the Opt-In Plaintiffs comprising the collective group in this action agreed to proceed as just that - a collective group, as envisioned by § 216(b) of the FLSA. As the Fourth Circuit Court of Appeals has made clear, collective actions brought under the FLSA are treated differently than class actions brought under Rule 23, particularly in regard to the settlement approval process. *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25 (4th Cir. 2019). To be sure, in

*Haskett,* the Fourth Circuit recently clarified that "unlike Rule 23, section 216(b), does *not* require a district court to notify potential claimants about a proposed settlement." *Id*. (emphasis provided). This is largely because FLSA collective actions are limited to those who join the case by affirmatively signing an opt-in form, whereas Rule 23 class actions affect absent class members who may not have even been aware of the existence of the class action. *Hager v. Omnicare, Inc.*, No. 5:19-cv-00484, 2021 U.S. Dist. LEXIS 219456, at *12 n.2 (S.D. W. Va. Nov. 15, 2021) ("The standard for settlement approval under the FLSA is much less rigorous than the standard under Fed. R. Civ. P. 23, because Rule 23 settlements extinguish the claims of non-participating class members.") (collecting cases). Here, the Opt-In Plaintiffs delegated the collective prosecution and settlement of this case to the Named Plaintiff and Plaintiffs' counsel as set forth in the opt-in form they signed when joining the case. The opt-in form specifically authorized the Named Plaintiff and Plaintiffs' counsel to "make all decisions with respect to the conduct and handling of this action, including the settlement thereof." (ECF No. 27.)  And, unlike in Rule 23 class actions, the rights of absent class members who did not affirmatively choose to join the case by signing an opt-in form remain unaffected by the settlement reached in this case and remain free to pursue any course of action of their choosing.

Likewise, Plaintiffs' counsel also believes the settlement reached in this matter is fair and reasonable. (Ex. 2; Ex. 3.) In evaluating a settlement "a court is entitled to rely on the judgment of experienced counsel for the parties and should hesitate to substitute its own judgment for that of counsel." *Stone v. SRA Int'l, Inc.*, 2015 U.S. Dist. LEXIS 193972, at *7 (E.D. Va. Mar. 20, 2015). Plaintiffs' counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses over the 22 months of litigating this case and has ample evidence on which to base an informed assessment of the proposed settlement. Based on their

14

knowledge of the case and the applicable law, as well as their experience in numerous similar wage-and-hour actions, Plaintiffs' counsel believes the settlement is fair, reasonable and adequate. (Ex. 2; Ex. 3.) "Although the Court is not bound by counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).

Further, there is no evidence of any type of fraud or collusion in the achievement of the settlement. "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *McCurley v. Flowers Foods, Inc.*, Civil Action No. 5:16-cv-00194-JMC, 2018 U.S. Dist. LEXIS 226234, at *5 (D.S.C. Sep. 10, 2018). Defendant is represented by experienced class action counsel who have litigated dozens of FLSA collective actions. Finally, the fact that the Parties achieved the settlement with the assistance of a nationally recognized wage and hour mediator is indicia of the fairness of the settlement. *Id.* at *6 ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached."). Thus, these factors also weigh in favor of approving the Settlement.

## II.    PLAINTIFFS' COUNSEL IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS

The FLSA contains a mandatory fee-shifting provision, which provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The goal of a statutory award of attorneys' fees and costs is to "ensure access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). For purposes of recovery of attorneys' fees and costs, a "prevailing party" is one who has "succeed[ed]

on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*

Although payment of attorneys' fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). The amount of Plaintiffs' fee entitlement should generally be determined according to the well-established lodestar calculation method. *See, e.g., Eckerhart*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Under the lodestar method, the reasonable hours devoted to the litigation are multiplied by a reasonable hourly rate to arrive at a base hourly recovery, or "lodestar." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 765 (7th Cir. 1982), cert. denied, 461 U.S. 956 (1983). The lodestar amount is generally considered the presumptively reasonable fee in a given case. *See Alexander S. v. Boyd*, 929 F. Supp. 925, 932 (D.S.C. 1995), *aff'd mem.* 89 F.3d 827 (4th Cir. 1996). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* The lodestar amount may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. *Id.*

While the lodestar calculation if often used in determining attorneys' fees, "the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases" such as this one. *Gagliastre v. Capt. George's Seafood Restaurant, LP*, No. 2:17-cv-379 2019 U.S. Dist. LEXIS 90468, at *17 (E.D. Va. May 29, 2019) (citing *Goldenberg v. Marriot PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998); *see also Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W.Va. 2009) (collecting

cases in the Fourth Circuit for the proposition that the percentage method has "overwhelmingly" become the preferred method for calculating fees in common fund cases). The percentage of the fund method calculation is often preferred because it "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys" and it allows courts to reward counsel for the "efficient settlement of a case." *Jones*, 601 F.Supp.2d at 759. Even where the common fund approach is used, the lodestar amount nevertheless proves useful as a crosscheck when analyzing an attorney fee request for reasonableness.

The Fourth Circuit has also provided clarity as to the standard for determining a reasonable figure for attorneys' fees. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) (adopting factors in *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The factors for attorney fee petitions enumerated by the Fourth Circuit in *Barber* have even been expressly incorporated into Local Civil Rule 54.02, D.S.C., which states that "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)." Local Civil Rule 54.02, D.S.C. As the Fourth Circuit's holding in *Barber* adopted the factors of the Fifth Circuit from the case of *Johnson v. Georgia Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *Johnson* is relevant in determining an award of fees as well. In *Barber*, the Fourth Circuit held the following factors to be considered in determining a reasonable attorneys' fee:

    (1)    The time and labor expended;
    (2)    The novelty and difficulty of the questions raised;
    (3)    The skill required to properly perform the legal services rendered;
    (4)    The attorney's opportunity costs in pressing the instant litigation;
    (5)    The customary fee for like work;
    (6)    The attorney's expectations at the outset of the litigation;
    (7)    The time limitations imposed by the client or circumstances;
    (8)    The amount in controversy and the results obtained;
    (9)    The experience, reputation and ability of the attorney;
    (10)    The undesirability of the case within the legal community in

which the suit arose;

(11)    The nature and length of the professional relationship between attorney and client; and

(12)    Attorneys' fees awards in similar cases.

Local Civ. Rule 54.02(A) (D.S.C.); *Barber*, 577 F.2d at 226, n.28. Provided the factors are considered and findings duly made, such determination will not be overturned on appeal "unless under all of the facts and circumstances it is clearly wrong" because "the allowance of attorneys' fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Id.*

Plaintiffs' counsel requests and Defendant has agreed to pay $240,000.00 in attorneys' fees as awarded by the Court. This figure is substantially less than Plaintiff's Counsel's actual total lodestar amount and is a product of significant arm's-length negotiations. (Ex. 2; Ex. 3.)

A.    **The Attorneys' Fees Requested Are Fair, Reasonable, and Appropriate under *Barber*.**

Even though courts are required to consider all of the *Barber* factors in determining whether the fee is reasonable, courts are not required to strictly apply the factors in every case since all of the factors are not always applicable. *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 U.S. Dist. LEXIS 112985, at *7 (D.S.C. Aug. 26, 2015) (citing *EEOC v. Serv. News, Co.*, 898 F.2d 958, 965 (4th Cir. 1990)). Further, the Fourth Circuit has held "that to the extent that any of these factors already has been incorporated into the lodestar analysis, we do not consider that factor a second time." *E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013). Nevertheless, consideration of the *Barber* factors is a requirement under the Local Civil Rule 54.02(A) D.S.C., and accordingly, the following analysis references these factors by number. As further demonstrated below, each of these twelve factors weighs in favor of approving Counsel's requested fee award.

18

### 1. Time and Labor Required (the First *Barber* Factor)

As to the first *Barber* factor, the time and labor expended, Plaintiffs' counsel has spent a vast amount of time and labor in litigating this case for the past 22 months. Plaintiffs' counsel's hours expended in the prosecution of this case, excluding time that will be expended in wrapping up settlement, are detailed in their declarations submitted herewith. (Ex. 2; Ex. 3.) Reasonably expended hours include those that are "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Hensley*, 461 U.S. at 437; *see also Perkins v. Mobile House. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). ("[W]e understand 'hours reasonably expended' to be billable hours – that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue."). In determining the amount of reasonably expended hours, "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case." *Perkins* 847 F.2d at 738.

The hours spent by Plaintiffs' counsel in litigating this case were necessary to successfully forward the litigation. The Parties engaged in extensive briefing on the Motion to Dismiss and other motions filed in this case. The Parties also conducted voluminous discovery including four depositions, preparation for numerous additional depositions, and the exchange of thousands of pages of documents in discovery. Accordingly, the time and labor devoted to this collective action justifies an award of the requested attorneys' fees because the requested contingency fee is less than Plaintiffs' counsel's actual lodestar amount. *See Irvine*, 204 F. Supp. 3d at 850 (finding proposed fees "less than the lodestar number . . . to be reasonable"); *Weckesser*, 402 F. Supp. 3d at 308 (comparing fee request to lodestar to determine reasonableness).

### 2. Novelty and Difficulty of the Issues (the Second *Barber* Factor)

This case involved novel and complex issues, as well as representation of over 400 employees. To be sure, many facets of the case were novel because they were specific to the unique

nature of working in a medical facility during the Covid-19 pandemic – uncharted territory for all involved as the pandemic was unfolding. Very few lawyers are willing to undertake this type of collective action on behalf of workers because of the unique area of the law and the amount of resources needed to pursue a collective action of this nature. The novelty and difficulty presented by this case is appropriately reflected in the hours submitted by Plaintiffs' counsel. *See McClaran*, 2015 U.S. Dist. LEXIS 112985, at *8-9 (noting that the difficulty of the case is reflected in the hours expended by counsel); *Hammonds v. Estate Mgmt. Servs., Inc.*, 2023 U.S. Dist. LEXIS 24449 (D.S.C. Jan. 23, 2023) (observing that FLSA cases involve "difficult issues implicating damages calculations and discovery").

### 3.  Skill Required: The Experience, Reputation, and Ability of the Attorneys (the Third and Ninth *Barber* Factors)

As another court in this District has held, "[e]mployment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *31 (D.S.C. Dec. 6, 2013). Plaintiffs' counsel's law practices focus primarily on employee-side employment law matters. (Ex. 2; Ex. 3); *See also Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *44 (D.S.C. June 21, 2019) ("The attorneys at Falls Legal, LLC who prosecuted this case are experienced class action and employment lawyers with good reputations among the class action and employment bars."). Plaintiffs' counsel's efforts in bringing this litigation to a successful conclusion confirm the experience and ability of the attorneys involved. The professional standing and expertise of opposing counsel is also an important factor in evaluating the quality of services rendered by Plaintiffs' counsel and "should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005). Defendant's counsel is experienced, respected, and

highly skilled. That Plaintiffs' counsel was able to negotiate such a substantial settlement further confirms the quality of the representation.

### 4.    Preclusion of Other Employment (the Fourth *Barber* Factor)

Plaintiffs' counsel has been precluded from accepting and/or working on other matters as a result of the substantial time and resources devoted to the investigation, litigation, and negotiation required to achieve and implement the settlement.  Plaintiffs' counsel has spent a significant amount of their time litigating this case on behalf of the Plaintiffs. (Ex. 2; Ex. 3.) Such a time commitment represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which Plaintiffs' counsel could have worked.

In addition, Plaintiffs' counsel also agreed to advance the costs of this litigation on a contingency basis, since Plaintiffs did not have the financial ability to pay the costs associated with this case. Further, Plaintiffs' counsel has not had the use of the operating funds used to advance the costs in this matter during the pendency of the case. *McCurley* 2018 U.S. Dist. LEXIS 226234, at *13 (observing that "counsel could have lost their investment in out-of-pocket expenses . . . such burdens are relevant circumstances that support the requested award.") Accordingly, this factor strongly supports the requested fee.

### 5.    The Customary Fee for Like Work (the Fifth and Twelfth *Barber* Factors)

The hourly rate included in the attorneys' fee calculation should be the "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). The determination of a market rate is an important factor in finding a reasonable hourly rate. *Westmoreland Coal Co. v. Cox*, 602 F.2d 276, 289 (4th Cir. 2010) (*citing and quoting Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "The fact Plaintiff seeks actual billing rates used for all clients strongly favors a finding the rates are per se reasonable." *Miller v. HSBC Fin. Corp.*,

21

2010 WL 2722689, at *2 (D.S.C. July 9, 2010) (*citing Liberty Mutual Insurance Company v. Employee Resource Management, Inc.*, 176 F. Supp. 2d 510 (D.S.C. 2001)). Under a lodestar analysis, Plaintiffs' counsel's requested fee is reasonable and appropriate. In such analysis, it is appropriate to use current billing rates, rather than historical rates, in order to compensate for the delay in payment for the attorney's services. *See id.* at 763 (holding that using current billing rates is an "accepted method of compensating for a long delay in paying for attorneys' services") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also*, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (same).

Plaintiffs' counsel has achieved outstanding results in a complex case while expending significant effort despite the high risk that there would be no recovery. The hourly rates proposed by Plaintiffs' counsel are in line with what other lawyers charge for similar work and are supported by case law from this District over the last decade, particularly when taking inflation into account. *See S. Carolinians for Responsible Gov't v. Krawcheck*, 2012 U.S. Dist. LEXIS 94703, at *4 (D.S.C. July 9, 2012) (Court allowed hourly rates of $425 and $385 in 2012); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) (Court awarded hourly rate of $410 and total fees of $500,000 to prevailing party in wage and hour case in 2012); *Savani v. URS Prof'l Solutions LLC*, 2014 WL 172503 (D.S.C. Jan. 15, 2014) (Court allowed $400 hourly rate and total fees of $729,000 in employment case in 2014); *see also Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016) (discussing the *Barber* factors and customary fee rates in South Carolina).

The requested hourly rates are also abundantly reasonable when compared to those approved in other more recent wage and hour class and collective actions in this District. *See, e.g., McClaran*, 2015 U.S. Dist. LEXIS 112985, at *12 (approving hourly rates of $750.00, $650.00, and $450.00 in FLSA collective action alleging tip credit violations in 2015); *Flowers Foods, Inc.*,

2018 U.S. Dist. LEXIS 226234, at *19 (approving hourly rates of $300.00 to $850.00 in collective action alleging independent contractor misclassification of bread truck drivers in 2018); *see also In re Allura Fiber Cement Siding Litig.*, Civil Action No. 2:19-mn-02886-DCN, 2021 U.S. Dist. LEXIS 96931, at *18 (D.S.C. May 21, 2021) (approving hourly rates of $371 to $894 in product defect class action). The requested hourly rates are reasonable for an FLSA collective action case in the District of South Carolina. This factor also supports the requested attorneys' fees.

### 6.   Whether the Fee Is Fixed or Contingent (the Sixth *Barber* Factor)

None of the Plaintiffs has been charged any monies for any of the fees or costs in this matter, either before or after the Settlement was reached. Plaintiffs are not in a financial position to have retained counsel to pursue their unpaid wages on an hourly basis. The requested fees and reimbursement of costs represent the only compensation available to Plaintiffs' counsel. The only expectation Plaintiffs' counsel had in this case, from the outset, was that they could recover their costs and a reasonable fee if Plaintiffs prevailed or a settlement was reached.

The contingent nature of the fees in this matter, and the risk associated with the same, is a factor that courts in this District have considered in determining the award of attorney's fees. *Flowers Foods, Inc.*, 2018 U.S. Dist. LEXIS 226234, at *19-20 ("The court finds that the requested fee is appropriate because contingent fee cases hold substantial risk from the start."); *In re Allura Fiber Cement Siding Litig.*, 2021 U.S. Dist. LEXIS 96931, at *17 (same). Given the risk of no payment that goes along with contingency representation, this factor weighs in favor of the requested attorneys' fees as well.

### 7.    Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)

Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir.

1974) abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); *see also Doucet ex rel. Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1262 (M.D. Ala. 1999). The very nature of employment cases requires long and intense hours, great risk of no payment of attorneys' fees at all, or, under the best of circumstances, late payment received long after the work has been accomplished. The amount of time required by the circumstances of this case is discussed in connection with items 1 and 4 above. Further, the potential for any wage litigation defendant to argue the statute of limitations places an importance on moving as quickly as possible to develop and file a case. "These time limitations frequently required class counsel to take time away from other matters, and devote substantial resources to particular deadlines, on short notice." *Flowers Foods, Inc.*, 2018 U.S. Dist. LEXIS 226234, at *19-20 (citing *O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 734 (E.D. Va. 1998), *aff'd*, 188 F.3d 502 (4th Cir. 1999)). Accordingly, this factor weighs in favor of the requested fee.

### 8. The Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)

The Fourth Circuit has held that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The settlement in this matter will provide each Plaintiff with a monetary settlement amount directly related to the number of meal break deductions taken as to each individual's pay. "In evaluating the results obtained for the class, courts have considered whether plaintiffs would receive a substantial percentage of their back pay amount." *McClaran*, 2015 U.S. Dist. LEXIS 112985, at *9. Here, the total settlement amount represents 83.22% of the Plaintiffs' back pay based on a two year statute of limitations. (Ex. 2.)

In addition to the monetary recovery achieved under the settlement, the filing and prosecution of this case has also brought about changes of a non-monetary nature. (Ex. 4.) "Courts

24

have noted that 'there is a significant public benefit in having experienced attorneys litigate cases' such as this one, which may impact other similar situations in the employment context." *Robinson*, 2019 U.S. Dist. LEXIS 103831, at *47 (quoting *McClaran*, 2015 U.S. Dist. LEXIS 112985, at *4). The results of this action have provided such a benefit that goes beyond the monetary payments provided in the settlement as the subject auto-deduction policy was suspended following the filing of this action. (Ex. 4.) This non-monetary benefit should be considered in addition to the monetary payments when evaluating the results obtained under the eighth *Barber* factor. For these reasons, this factor also weighs in favor of the requested attorneys' fees.

### 9.    The Undesirability of the Case (the Tenth *Barber* Factor)

As the Honorable R. Brian Harwell has observed when approving a settlement and attorney's fees request in an FLSA class action, "employment cases do not appear to be eagerly sought out by the majority of the plaintiff's bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *27 (D.S.C. Dec. 6, 2013). Courts have also recognized that the financial burden and time demands of complex or novel cases make them in some sense "undesirable" to be undertaken on a full contingency fee basis. *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). As noted, this case, like almost all complex or novel cases, has provided no immediate or guaranteed income. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). Moreover, given the substantial hurdles to recovery, there has been a substantial risk that the Plaintiffs, and thus Plaintiffs' counsel, would recover nothing at all for the litigation.

Importantly, the foregoing risks must be assessed as they existed at the time counsel undertook the case and not in light of the settlement achieved. *See, e.g.*, *Harman v. Lyphomed,*

*Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (holding that the riskiness of a case must be judged *ex ante* not *ex post*). When viewing the risk undertaken at the time that this action was initially investigated and commenced, it is clear that Plaintiffs' counsel knowingly undertook a significant risk by prosecuting this case, with no guarantee of any particular outcome. This too supports the fee request.

### 10. Nature and Length of the Professional Relationship between Attorney and Client (the Eleventh *Barber* Factor)

Counsel has represented Plaintiff since the preparation and filing of this case. This is the first matter for which counsel has provided legal services to Plaintiff. Accordingly, "this factor does not have much application in the approval of the attorney fee amount." *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *31.

### B. The Requested Reimbursement of Litigation-Related Costs and Expenses Is Fair, Reasonable, and Appropriate.

Plaintiffs' counsel also requests reimbursement for the reasonable and necessary litigation expenses and costs that they have advanced to prosecute this case. An award for reimbursement of reasonable litigation costs and expenses is warranted.

The Court "is authorized to award costs that are reasonable in nature." *McClaran*, 2015 U.S. Dist. LEXIS 112985, at *5 (citing Fed. R. Civ. P. 23(h)). Here, Counsel's expenses were incidental and necessary to the representation of Plaintiffs and are in line with costs charged to individual clients who pay out of pocket. (Ex. 2-A.) These expenses include one-half of the mediator's fees, court filing fees, the cost of the claims administrator for issuance of initial notice of the collective action following conditional certification (to over 8,000 employees) and the cost for settlement administration, postage, research and copy costs, and other incidental costs necessary to prosecute the case. *McClaran*, 2015 U.S. Dist. LEXIS 112985, at *5 (approving

reimbursement of costs associated with "travel expenses, employment of private investigators, mediation expenses, and document production").

All of the requested expenses were reasonable and necessary in the prosecution of this case and are detailed further in the itemized spreadsheet of expenses submitted herewith. (Ex. 2-A.) Accordingly, Plaintiffs' Counsel requests an award of $44,995.90 for reimbursement of out-of-pocket expenses reasonably incurred in this action.

III.    **THE NAMED PLAINTIFF AND VARIOUS DISCOVERY OPT-IN'S ARE ENTITLED TO SERVICE AWARDS**

The settlement agreement also provides the Named Plaintiff and the Opt-in Plaintiffs who were deposed and/or participated in responding to written discovery requests with service awards for their contributions to this litigation. Specifically, Plaintiffs request a service award in the individual amount of $2,500.00 to Named Plaintiff Perry for serving as named plaintiff, responding to written discovery requests, and sitting for a deposition. Plaintiffs also request service awards in the amount of $1,000.00 each for Opt-In Plaintiffs Shonda Mitchell, Cheryl Welch, and Linda Buskey for responding to written discovery requests and sitting for a deposition. Finally, Plaintiffs request individual service awards in the amount of $500.00 each to the 16 other Opt-In Plaintiffs identified in Exhibit 1-A who responded to written discovery requests. All of these individuals have volunteered their time and provided documents in their possession relevant to the claims in this case, as well as information and context relating to the matters at issue. The requested service awards are reasonable in light of the time and effort that these 20 individuals expended in furtherance of the investigation, litigation, and settlement of this matter, and the risks they endured to vindicate not only their own rights, but also the rights of the other Opt-in Plaintiffs.

Service awards are commonly awarded in FLSA collective actions. *See, e.g., Edelen v. Am. Residential Servs., LLC*, No. DKC 11-2744, 2013 U.S. Dist. LEXIS 102373, at *16 (D. Md.

July 22, 2013). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998). This is especially true in employment litigation. *See Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610, at *41-42 (D.S.C. Mar. 8, 2012) ("Service or incentive payments are especially appropriate in employment litigation, where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)). "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Robinson*, 2019 U.S. Dist. LEXIS 103831, at *51 (quoting *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-cv-2149, 2015 U.S. Dist. LEXIS 36393, at *13 (D.S.C. Mar. 23, 2015)).

"Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions." *Faile*, 2012 U.S. Dist. LEXIS 189610, at *42. Courts in this district have awarded service payments in wage and hour collective and class actions equating to significantly more than the amount requested herein. *Id.* (approving service awards of $67,500.00, with lead Plaintiffs receiving awards of $18,000.00 each and steering committee members receiving $9,600.00 each). Likewise, the requested service payments are well within the range of awards that courts around the country regularly and routinely grant under these circumstances in wage and hour class cases. *See, e.g., Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000

28

to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000); *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, *9 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards to seven named plaintiffs in hybrid class/collective action involving unpaid overtime); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 U.S. Dist. LEXIS 60790, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named); *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case); *Frank*, 228 F.R.D. at 187 (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund).

In light of the results obtained, and in consideration of the length and complexity of this litigation and the time and commitment required, the other Opt-in Plaintiffs have substantially benefited from the actions of these 20 Plaintiffs. Without their efforts, this case would not have been brought or vigorously litigated for the past 22 months, and this Settlement would not have been achieved. As a result of these efforts, and the attendant risks, the requested service payments are amply justified.

## **CONCLUSION**

The Parties reached this Settlement as the result of contested litigation, and it provides a fair and reasonable resolution of a *bona fide* dispute between the Parties. The Parties engaged in extensive discovery and analysis of pertinent information and resolved the issues between them with the assistance of a mediator with substantial expertise in this area. The Settlement provides the Plaintiffs with an opportunity to receive significant monetary relief in a contested matter. For these reasons, the Parties request that the Court enter the Parties' proposed order and approve the Settlement.

Respectfully Submitted,

FALLS LEGAL, LLC

s/ J. Scott Falls
J. Scott Falls
Federal I.D. No. 10300
Email: scott@falls-legal.com
Ashley L. Falls
Federal I.D. No. 12083
Email: ashley@falls-legal.com
P.O. Box 12910
Charleston, South Carolina 29422
Telephone: (843) 737-6040
Facsimile: (843) 737-6140

ANDERSON ALEXANDER, PLLC

Clif Alexander*
Texas Bar No. 24064805
Email: clif@a2xlaw.com
Austin W. Anderson*
Texas Bar No. 24045189
Email: Austin@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, TX 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Admitted *Pro Hac Vice*

Counsel for Plaintiffs

Charleston, South Carolina
November 17, 2023