# **<u>EXHIBIT 1</u>**

# Settlement Agreement

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| CAROLINE PERRY, *on behalf of herself and all others similarly situated*, | |
| Plaintiff, | Civil Action No.: 4:22-cv-00061-JD |
| v. | |
| McLEOD HEALTHCARE NETWORK, LLC, | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE

### RECITALS

**WHEREAS,** on January 6, 2022, Maya Wilkes filed a collective action lawsuit in the United States District Court for the District of South Carolina, Florence Division, styled *Wilkes, et al. v. McLeod Healthcare Network, LLC*, Case No. 4:22-CV-00061-JD (the "Lawsuit" or the "Action");

**WHEREAS,** Caroline Perry ("Named Plaintiff") was subsequently substituted as Named Plaintiff via the filing of an amended complaint on July 17, 2023;

**WHEREAS,** the individuals identified in <u>Exhibit A</u> consented to join the Action as Opt-In Plaintiffs pursuant to 29 U.S.C. § 216(b), and have neither withdrawn their consent nor been dismissed by the District Court.

**WHEREAS,** the Parties agreed to resolve this matter following mediation held with Michael Russell on July 18, 2023. The terms and conditions of settlement reflected in this Agreement are a product of the Parties' negotiations and mediation, which were conducted at arm's length.

**WHEREAS,** the Parties, through their counsel, are familiar with the facts of the Action and the legal issues raised by the pleadings. The Parties acknowledge that *bona fide* disputes and controversies exist between them, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies, they desire to compromise and settle all claims and

1

causes of action which are the subject of the Action. Accordingly, all Parties stipulate and agree that this settlement is a full and complete compromise and resolution, achieved through counsel, of bona fide disputes between the Parties with respect to coverage or amount due under the FLSA and is not a mere waiver of liquidated or other statutory claims.

**WHEREAS**, Plaintiffs and their counsel have conducted an investigation, performed discovery, conducted litigation, and believe, in view of costs, risks, and delay of continued litigation balanced against the benefits of resolution, that the resolution provided for in this Agreement is in the best interests of Plaintiffs and represents a fair, reasonable, and adequate resolution of the Action.

**WHEREAS**, Defendant denies any liability or wrongdoing whatsoever associated with Plaintiffs and the claims alleged in the Action. Defendant contends that it has at all times fully complied with the FLSA and that the Action cannot be litigated on a collective basis. Nevertheless, without admitting or conceding any damages or liability whatsoever or the propriety of collective action status, Defendant has entered into this Agreement to avoid the burden, expense, and uncertainty of further litigation.

**WHEREAS**, it is the desire of all Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims that have been brought in the Action or that reasonably arise out of the facts alleged in the Action;

**NOW, THEREFORE**, the Parties, intending to be legally bound and in consideration of the mutual promises, covenants, and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, agree as follows:

## TERMS AND PARTIES

1.      This Settlement Agreement and Release ("Agreement") is entered into between Caroline Perry ("Named Plaintiff"), individually and on behalf of all persons identified in Exhibit A ("Opt-in Plaintiffs") (collectively, "Plaintiffs", "Settlement Class", "Settlement Class Members," or the "Collective"), and McLeod Healthcare Network, LLC and its affiliated entities set forth herein ("Defendant") and sets forth the complete terms and conditions for settlement of the Action and release of all claims asserted in the Action. Collectively, Defendant and Plaintiffs are referred to herein as the "Parties". "Plaintiffs' Counsel" or "Collective Counsel" refers to Anderson Alexander, PLLC and Falls Legal, LLC. "Defendant's Counsel" refers to Jackson Lewis P.C.

## NO ADMISSION

2.      The Parties acknowledge and agree that there is a good-faith dispute as to whether any amounts for alleged unpaid wages are owed, and they agree that the amount to be paid under this Agreement represents a good-faith compromise of such dispute. Each of the Parties hereto has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. In particular, and without limiting the generality of the foregoing, nothing in this Agreement, nor the consummation of this Agreement, is to be

2

offered, construed or deemed an admission of liability, culpability, negligence, wrongdoing, impropriety, responsibility or fault whatsoever on the part of Defendant, Releasees, or the employees and agents of any of them, and all such entities and persons expressly deny any liability, culpability, negligence, wrongdoing, impropriety, responsibility or fault whatsoever.

## COURT APPROVAL AND MUTUAL COOPERATION

3.      This Agreement is not subject to revocation, but its enforceability is expressly contingent upon such approval by the United States District Court for the District of South Carolina ("District Court") as may be necessary to effectuate full and complete settlement in accordance with the FLSA.  Within ten (10) days of complete execution of this Agreement (including by the Named Plaintiff, Plaintiffs' Counsel, Defendant, and Defendant's Counsel), Plaintiffs' Counsel will provide Defendant's Counsel an opportunity to review and provide comment regarding an initial draft of Plaintiffs' Unopposed Motion for Approval, which will request entry of an Order approving the settlement terms of this Agreement and dismissing this Action with prejudice. Subject to its approval (which will not be unreasonably withheld), Defendant agrees not to oppose Plaintiffs' Motion for Approval, and the Motion shall be filed within twenty (20) days of complete execution of this Agreement.  Counsel for the Parties shall cooperate in good faith to draft the necessary pleadings to secure approval and dismissal with prejudice by the District Court.  In the event that this Agreement does not obtain approval of the District Court, this Agreement and all matters covered by it shall be null and void.  In such event, nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the Action, and the parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Action as if this Agreement never existed.  In the event the District Court does not approve a term of this Agreement, the Parties will confer in good faith about appropriate revisions to this Agreement, and the Parties may submit a revised Agreement to the District Court for approval in the event they agree upon appropriate revisions.

4.      The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Agreement.  The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

5.      This Agreement shall become effective on the "Settlement Effective Date," which is defined as the date the Court enters an order approving this Agreement and dismissing the action with prejudice.

## SETTLEMENT AMOUNTS AND ALLOCATION

6.      **Gross Settlement Fund.**  In consideration for the signing of this Agreement and for the compliance with the promises made herein, Plaintiffs agree to accept, and Defendant agrees to make available up to, but not more than, the maximum gross amount of SIX

3

HUNDRED THOUSAND DOLLARS ($600,000.00). This amount shall be referred to herein as the "Gross Settlement Fund." Under no circumstances shall Defendant be required to pay more than the Gross Settlement Fund under this Agreement, except as specifically set forth in this Agreement as to Defendant's payment of the employer's share of applicable payroll taxes as required by law, and with regard to any additional amounts paid pursuant to Paragraph 9. Defendant shall not be required to set aside, deposit or transfer any funds except as expressly stated herein and not until after the Settlement Effective Date.

7.    **Claims Administrator.** The parties agree that third-party administration of claims is beneficial given the nature of this matter and the numerosity of the Settlement Class. To that end, the Parties will mutually select a Claims Administrator to carry out the administrative tasks set forth in this agreement, the cost of which will be deducted from the Gross Settlement Fund.

8.    **Payments Out of the Gross Settlement Fund.**

**a. Attorneys' Fees, Expenses, and Costs.** Plaintiffs' Counsel will apply to the District Court (and Defendant will not oppose) for payment from the Gross Settlement Fund of TWO HUNDRED FORTY THOUSAND DOLLARS $240,000.00, in attorneys' fees, exclusive of reimbursement for expenses and costs, which also shall be paid from the Gross Settlement Fund after deduction of attorneys' fees. Notwithstanding Paragraph 3 of this Agreement, the enforceability of this Agreement is not contingent on the Court's approval of the requested attorneys' fees, costs, and expenses, provided that the approved amount does not exceed $240,000.00 in attorneys' fees, exclusive of reimbursement for expenses and costs. If the District Court awards a lesser amount, then (i) Defendant shall pay the lesser amount approved by the District Court, (ii) any reduction will not reduce the Gross Settlement Fund and will be distributed as part of the payments to the Settlement Class through the Net Settlement Fund, and (iii) the Release language in Paragraphs 15-19 shall continue to be fully effective. Defendant agrees that it will not oppose an award of attorneys' fees consistent with this agreement before the District Court (although Defendant will not support or make any representation that the settlement amount paid to resolve the Plaintiffs' claims for attorneys' fees and costs is reasonable and will not express approval of the hourly rates claimed or number of hours worked by Plaintiffs' Counsel). The total attorneys' fees actually paid will be in the amount approved by the Court, provided that the approved amount does not exceed $240,000.00, and will be paid from the Gross Settlement Fund, in full and complete satisfaction of all claims by Plaintiffs or their counsel for attorneys' fees of any kind whatsoever (including any fees incurred after execution of this Agreement). Likewise, the total amount of expenses and costs actually paid will be in the amount approved by the Court and will be paid from the Gross Settlement Fund after deduction of attorneys' fees, in full and complete satisfaction of all claims by Plaintiffs or their counsel for expenses and costs of any kind whatsoever.

i.    Plaintiffs and Plaintiffs' Counsel shall not be entitled to any attorney's fees, expenses, and costs in addition to those awarded by the Court pursuant to this Agreement and paid from the Gross Settlement Fund.

4

ii.       Defendant shall have no responsibility for allocating or distributing attorneys' fees or expenses/costs among the Plaintiffs' Counsel.

iii.       Plaintiffs and Plaintiffs' Counsel shall defend, hold harmless, and indemnify Defendant and Defendant's Counsel from and against any dispute, claims, and damages, regarding the payment or apportionment of attorneys' fees, expenses, and costs related to the settlement of this Action.

**b. Service Awards to Named Plaintiff and Other Plaintiffs.** Plaintiffs' Counsel will apply to the District Court (and Defendant will not oppose) for payment from the Gross Settlement Fund of THIRTEEN THOUSAND FIVE HUNDRED DOLLARS, AND NO CENTS ($13,500.00) for Service Awards to the Named Plaintiff and certain Other Plaintiffs in the respective amounts specified in Exhibit A, in recognition of their active role in this Action and in exchange for a general release of all claims arising from or related to their employment. These Service Awards shall be in addition to the allocations referenced in Paragraph 11. Notwithstanding Paragraph 3 of this Agreement, the enforceability of this Agreement is not contingent on the Court's approval of the requested Service Awards, provided that the approved amount does not exceed $13,500.00. If the District Court awards a lesser amount, then (i) Plaintiffs shall receive the lesser amount approved by the District Court, (ii) any reduction will not reduce the Gross Settlement Fund and will be distributed as part of the payments to the Settlement Class through the Net Settlement Fund, and (iii) the Release language in Paragraphs 15-19 shall continue to be fully effective. Defendant agrees that it will not oppose Service Awards up to $13,500.00 before the District Court (although Defendant will not support or make any representation that the Service Awards are reasonable). The total amount of Service Awards actually paid will be in the amount approved by the Court, provided that the approved amount does not exceed $13,500.00, and will be paid from the Gross Settlement Fund.

i.       Plaintiffs and Plaintiffs' Counsel shall not be entitled to any Service Awards in addition to those awarded by the Court pursuant to this Agreement and paid from the Gross Settlement Fund.

ii.       The Named Plaintiff and Plaintiffs' Counsel exercised discretion to designate which Plaintiffs would be subject to the requested Service Awards and the amount of each requested Service Award. Defendant shall have no responsibility for allocating or distributing the Service Awards.

iii.       Should any Plaintiff dispute the payment or apportionment of the Service Awards, then such disputing Plaintiff shall defend, hold harmless, and indemnify Defendant and Defendant's Counsel from and against any dispute, claims, and damages, regarding the payment or apportionment of the Service Awards.

iv.       Service awards will be allocated as non-wage income for taxation purposes and shall be paid without employment withholdings or deductions.

5

v.  Service awards will not be distributed until the Service Award Recipient completes the General Release attached as <u>Exhibit C</u>.

9.  **Reserve Fund.** The Parties agree to set aside and designate SIXTY THOUSAND DOLLARS, AND NO CENTS ($60,000.00) of the Net Settlement Fund as a Reserve Fund. To the extent that individuals who previously received notice of this collective action come forward to assert a claim ("Future Claimants"), such claims will be satisfied by monies in the Reserve Fund.

a.  **Payments out of the Reserve Fund.** Should Future Claimants contact Collective Counsel to represent them for the Settlement Claims as defined in Section 17, Future Claimants must fill out and submit to the Claims Administrator a claim form (Exhibit B). Upon receipt of a completed claim form by a Future Claimant, Claims Administrator will notify all counsel within seven (7) business days and Defendant's Counsel will provide the necessary data[1] for said claimant to the Claims Administrator and Plaintiffs' Counsel within five (5) business days. Thereafter, within ten (10) business days of receipt of the data from Defendant's counsel, the Claims Administrator will calculate and pay such Future Claimant their available settlement share out of the Reserve Fund with each Future Claimant's individual settlement share amount to be determined based upon the formula used to determine payments out of the Net Settlement Fund to Settlement Class Members as further described in Paragraph 11 below.

b.  **Reversion.** To be valid and payable, all claims must be submitted and received by the Claims Administrator prior to December 31, 2024. Any monies in the Reserve Fund that remain unclaimed as of January 10, 2025, will be paid by the Claims Administrator to Defendant.

c.  **Fees and Costs Pertaining to the Reserve Fund.** Collective Counsel will not charge any fees or costs to any Future Claimants so long as the initial Reserve Fund is not depleted; nor will Collective Counsel seek any recovery from Releasees for representing Future Claimants so long as the initial Reserve Fund is not depleted. Should the Reserve Fund be depleted prior to December 31, 2024, the Parties will confer in good faith to determine the appropriate course of action to handle any outstanding claims on the Reserve Fund. Notwithstanding the provisions of Section 7 and only if the Reserve Fund is depleted, Collective Counsel may claim a reasonable fee commensurate with the fees already recovered under this Agreement from any amounts recovered by Future Claimants that exceed the original Reserve Fund amount prior to December 31, 2024. The Claims Administrator shall promptly notify all counsel in the event the Reserve Fund falls below $7,500.00.

10.  **Net Settlement Fund.** The attorneys' fees, expenses, and costs awarded by the Court to Plaintiffs' Counsel, the Service Awards awarded by the Court for the Named Plaintiff and Other Plaintiffs, the Claims Administrator fees,[2] and the Reserve Fund will be subtracted from the Gross Settlement Fund, and the remaining amount is the Net Settlement Fund.

---

[1] For each Future Claimant, Defendant will provide the total number of automatic meal period deductions taken as each individual from January 7, 2019, through the date of execution of this Agreement.
[2] This amount includes costs incurred in sending the original Notice and Consent Form, in addition to the costs of

6

11. **Payments Out of the Net Settlement Fund to Settlement Class Members.** Defendant agrees to pay or cause to be paid no more than the total amount of the Net Settlement Fund, to be allocated among Settlement Class Members, and any employee payroll taxes associated with their claims to fully resolve and release the claims of the Settlement Class. Allocations among Settlement Class Members from the Net Settlement Fund have been determined by Class Counsel in their discretion, subject to Court approval. The Claims Administrator will calculate the settlement amount for each Collective Member by dividing the Net Settlement Amount by the total number of automatic meal period deductions taken as to the Collective from January 7, 2019, through the date of execution of this Agreement (the "Collective Period") to create a Per Break Value. The Claims Administrator shall then multiply the Per Break Value by the number of automatic meal period deductions taken as to each individual Collective Member during the Collective Period, to determine each Collective Member's individual settlement share (the "*Pro Rata* Settlement Amount"). Included on Exhibit A are the number of automatic meal break deductions taken per Plaintiff during the Collective Period, which will be used by the Claims Administrator to perform the calculations.  Unless expressly stated otherwise herein, Settlement Class Members shall not be entitled to any additional payments beyond what is contemplated by this Paragraph.

12. **Tax Allocations.** Payments to the Settlement Class, not including any enhancements paid to the Named Plaintiff or other Service Award recipient, shall be allocated as follows: (1) 50 percent of the payment to each Settlement Class Member shall be allocated to wages; and (2) 50 percent of the payment to each Settlement Class Member shall be allocated to non-wages representing statutory penalties and liquidated damages. The wage portion shall be subject to deductions as required by law, and a Form W-2 will be issued. The non-wage portion shall be paid without deductions, and a Form 1099 will be issued. All of the employer's share of payroll taxes on the wage portions of this Settlement shall be paid by Defendant, and said payroll taxes are in addition to the Gross Settlement Fund.

13. **Tax Reporting.** Within the time period prescribed by applicable law, Defendant will provide, or cause to be provided via the  Claims Administrator, an IRS Form W-2 (for wages) and an IRS Form 1099 (for non-wages), and any corresponding state tax reporting forms, to each Settlement Class Member.  Defendant will provide, or cause to be provided via the Claims Administrator, an IRS Form 1099 for any Service Awards received by the Named Plaintiff and any other Plaintiffs who receive a Service Award. Defendant will provide, or cause to be provided via the Claims Administrator, Plaintiffs' Counsel with an IRS Form 1099 for the attorneys' fees, expenses, and costs awarded to Plaintiffs' Counsel.  Plaintiffs' Counsel shall provide completed W-9 forms to the Claims Administrator in advance of payment.

14. **Tax Liability.** Each Plaintiff shall be solely and legally responsible to pay all taxes on the non-wage portion of their respective settlement payments, and all of the employees' share of taxes on the wage portion of their respective settlement payments.  Plaintiffs expressly acknowledge and agree that they are relying upon their own legal and/or tax advisors, and not upon Defendant or its attorneys, with respect to any tax aspects of this Agreement.  In the event

---

settlement administration to be incurred.

7

that it is determined that any taxes are owed based on the taxation laws in effect on the date of execution of this Agreement or that become due at any time in the future because of a change to the laws governing the taxation of such proceeds, Plaintiffs agree to assume the responsibility for and to pay said taxes, and further to indemnify and hold Defendant harmless in the event that any federal, state, or local taxing authority asserts against Plaintiffs any claim for unpaid taxes, failure to withhold taxes, or interest based upon Defendant's payment of the above-referenced settlement amounts.

### RELEASES BY THE NAMED PLAINTIFF
### AND THE SETTLEMENT CLASS

15.    Upon execution of this Agreement and approval by the Court, the Named Plaintiff and every Settlement Class Member will waive and release their "Settlement Claims", as defined herein. The Named Plaintiff is required to execute this Agreement to effectuate the Release on behalf of all of the Settlement Class.

16.    **Releasees.** The Release will be for the benefit of "Releasees," which is defined as follows: (i) McLeod Healthcare Network, LLC, McLeod Health, McLeod Regional Medical Center of the Pee Dee, Inc., McLeod Health Cheraw, McLeod Health Clarendon, McLeod Health Dillon, McLeod Loris Seacoast Hospital, McLeod Physician Associates II, and McLeod Occupational Health LLC; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, joint venturer, predecessor, successor, assign, or division of the entities in (i); and (iii) any past, present and/or future, direct and/or indirect, officers, directors, owners, partners, members, trustees, agents, employees, shareholders, representatives, advisors, insurers, attorneys, or employee benefit or welfare programs or plans (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i) or (ii) hereof.

17.    **Release.** The Named Plaintiff and Settlement Class Members release and fully discharge Releasees from the "Settlement Claims." The "Settlement Claims" are defined as any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the operative complaint in the Action, which means all claims for allegedly uncompensated overtime, minimum wage, or other unpaid wages, and including liquidated damages, interest, penalties or fines, that were asserted or could have been asserted in this Action under federal, state, or local law, including off-the-clock claims, arising from interrupted or missed meal breaks, through the Settlement Effective Date. This release of the Settlement Claims includes all claims under the Fair Labor Standards Act and all other claims for wages, including the South Carolina Payment of Wages Act, claims under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits arising from the alleged non-payment of wages. This release of the Settlement Claims includes any claim for recovering costs, fees, or other expenses including any and all attorneys' fees related to this Action. This release of the Settlement Claims includes any and all other claims which are derivative of wage claims being released.

8

18.     In addition, there shall be included release language on the back of each check sent to each Settlement Class Member stating: "I agree to all terms of the Settlement Agreement and Release in *Perry v. McLeod Healthcare Network, LLC*, and waive any right to bring suit for wages under state or federal law as stated therein."

19.     The effect of the Release and dismissal with prejudice of the Action on any future claim brought by a Settlement Class Member will be determined by the court in which any such claim is brought.

## SETTLEMENT PAYMENTS

20.     Within ten (10) business days after the Settlement Effective Date, the Claims Administrator will establish a qualified settlement fund ("QSF") under the Internal Revenue Code of 1986, as amended, and shall serve as trustee of the QSF and a fiduciary with respect to handling, management, and distribution of the QSF, including the handling of tax-related payments.

21.     Within five (5) business days after the establishment of the QSF, Defendant will transfer by wire or check the Gross Settlement Fund to the Claims Administrator plus the employer's share of payroll taxes, as calculated by the Claims Administrator.

22.     Within ten (10) business days after Defendant funds the Gross Settlement Fund into the QSF, the Claims Administrator will pay by electronic funds transfer the amount approved by the District Court for attorneys' fees, expenses, and costs to Collective Counsel. Claims Administrator will issue one form 1099 to Anderson Alexander, PLLC representing their payment of attorneys' fees and costs and one form 1099 to Falls Legal, LLC representing their payment of attorneys' fees and costs. This payment is contingent on Claims Administrator's receipt of a current form W-9 from Collective Counsel.

23.     Within ten (10) business days of Defendant funding the QSF and after the Named Plaintiff and Service Award Plaintiffs have signed the release required by paragraph 8 hereof, Claims Administrator will pay the Service Awards to the Service Award Plaintiffs by electronic funds transfer or check, as determined by each recipient. The Claims Administrator will issue a form 1099 to the Service Award Plaintiffs representing this payment. This payment is contingent on the Claims Administrator's receipt of a current form W-9 from Service Award Plaintiffs.

24.     Within ten (10) business days of Defendant funding the QSF, Claims Administrator will issue checks to each Settlement Class Member according to the terms set forth herein. The Claims Administrator will issue the applicable Forms W2 and 1099 to the Settlement Class Members representing this payment.

25.     Settlement Class Members have no right or claim to any funds made available under this Agreement unless and until they execute the release language contained on the back of the settlement checks as described herein.

9

26.    Settlement Class Members shall have ninety (90) calendar days after mailing of the settlement checks to deposit their respective settlement checks. If any Settlement Class Members do not endorse the release language and deposit their checks within ninety (90) days after mailing, their checks will be void and a stop-payment order shall be placed on such checks. In such event, those Settlement Class Members will be deemed to have waived irrevocably any right in or claim to a settlement share, but the Agreement and Release contained herein will nevertheless be binding upon them. Thirty (30) days before conclusion of the period for depositing checks, the Claims Administrator will notify Plaintiffs' Counsel of the names of those individuals who have not yet deposited their settlement check. Within fifteen (15) days of the conclusion of the 90-day period for depositing checks, the Claims Administrator will (a) notify Defendant's Counsel of the names of the Plaintiffs who did not timely deposit their checks and the amount of each Check that was not timely deposited, and (b) transfer any unclaimed funds to Defendant.

## PUBLICITY

27.    The Parties acknowledge that settlement of claims brought pursuant to the Fair Labor Standards Act requires approval by the Court and that the Court may require that this Agreement be part of the record for the Action. However, Named Plaintiff Perry and Plaintiffs' Counsel agree not to publicize the terms of this Agreement to any media outlet, social media platform, or law firm website. If the Court determines that this provision is improper or that part of this provision is improper, the provision or the improper part of the provision shall be deleted from the Agreement and such deletion shall not affect the validity of the remainder of the Agreement. Nothing contained herein shall be construed to prevent the disclosure of the amount and terms of settlement to the Parties' accountants, auditors, financial advisors, spouses, attorneys, tax authorities, or to any federal, state, or local government agency or court when required by law or court order to do so.

## ENFORCEMENT ACTIONS

28.    The Parties shall negotiate in good faith to resolve all issues or disputes that arise regarding this Agreement. Except as stated in Paragraph 19 (in regards to enforcing the Release in court), all claims and disputes regarding this Agreement, including any disputes regarding the validity, applicability, terms, or enforceability of this Agreement, shall be adjudicated exclusively by binding arbitration, rather than by a judge or jury in court. The Parties mutually agree that Michael Russell will serve as the arbitrator in any such arbitration, and the locale of any hearing will be via Zoom and/or in Nashville, TN. The arbitrator's fees and costs will be borne equally by the Parties.

## CONSTRUCTION

29.    The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties.

10

This Agreement has been drafted jointly by counsel for the Parties and shall not be construed in favor of or against any Party.

30.    Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

## MODIFICATION

31.    This Agreement may not be changed, altered, or modified except in writing and signed by the Parties and expressly referring to this Agreement. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

32.    This Agreement, together with Exhibit A and Exhibit B constitute the entire agreement between the Parties relating to the resolution of this Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. The Parties expressly acknowledge that they have not relied on any representations or promises not expressly contained in this Agreement. No rights hereunder may be waived except in writing.

## BINDING SCOPE; NO PRIOR ASSIGNMENTS

33.    This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## APPEAL

34. The Parties agree to waive all appellate rights arising out of the Court's approval (or disapproval) of this Agreement.

## SIGNATURES AND PARTIES' AUTHORITY

34.    Prior to execution, Plaintiffs' Counsel have fully explained the Settlement to the Named Plaintiff, provided her with a copy of the Agreement, and answered any questions raised by the Named Plaintiff. The signatures of Plaintiffs' Counsel and the Named Plaintiff below represent their knowing and voluntary agreement to enter into this Agreement on behalf of the Named Plaintiff and all other Settlement Class Members and to bind them to the terms and conditions of the Agreement. It is agreed that, because the Settlement Class Members are so

11

numerous, it is impossible or impractical and not required to have each Settlement Class Member execute this Agreement.

35.    Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate and execute this Agreement and to take all appropriate action required to effectuate the terms hereof and to execute any other documents required to effectuate the terms of this Agreement.

## COUNTERPARTS

36.    This Agreement may be executed in one or more counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.  Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, and electronic signatures shall be deemed original signatures.  All executed copies of this Agreement, and photocopies thereof, shall have the same force and effect and shall be legally binding and enforceable as the original.

## GOVERNING LAW

37.    All terms of this Agreement shall be governed by and interpreted according to the laws of South Carolina.

**NAMED PLAINTIFF HAS BEEN PROVIDED A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT. NAMED PLAINTIFF HAS READ AND FULLY CONSIDERED THIS AGREEMENT AND THE RELEASE LANGUAGE HEREIN AND DESIRES TO ENTER INTO THIS AGREEMENT.**

**NAMED PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH COUNSEL, ENTERS INTO THIS AGREEMENT AND RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE BROUGHT OR COULD HAVE BROUGHT IN THE ACTION.**

(signature page follows)

12

_____

Caroline Perry

Date: 9/22/23 12:00 CDT

_____

Fulton Ervin
Chief Financial Officer

_____

J. Scott Falls
Ashley L. Falls
FALLS LEGAL, LLC
245 Seven Farms Drive, Suite 250
Charleston, SC 29492

Date: 9/26/2023

_____

T. Chase Samples
J. Brendan Kelley
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601

ATTORNEYS FOR DEFENDANT

Date: 9/26/23

_____

Clif Alexander
Austin W. Anderson
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, TX 78401

ATTORNEYS FOR PLAINTIFF

Date: 9/22/23 12:34 CDT

13

# **EXHIBIT 1-A**

Opt-In Settlement List with Service Awards

| Last Name | First Name | Auto-Deducts Taken | Service Award Amount |
|---|---|---|---|
| ADAMS | ABREANNA | 169 | |
| ADAMS | KIARA | 193 | |
| ALEXANDER | TAMELA | 7 | |
| ALLISON | KAYLEIGH | 206 | |
| AMAYA | ANITA | 42 | |
| ANDERSON | ELIZABETH | 126 | |
| ANDERSON | MARSHA | 281 | |
| ARNETTE | AMANDA | 453 | |
| ARNETTE | AUBREY | 582 | |
| ATKINSON | SARAH | 556 | |
| AVELLANEDA | AMY | 115 | |
| BADGETT | PENNY | 559 | |
| BAILEY | CRYSTAL | 210 | |
| BALL | CASSANDRA | 12 | |
| BALLOON | LAKESHIA | 71 | $500.00 |
| BAREFOOT | PATTI | 76 | |
| BARRIER | SHAVANTA | 278 | |
| BARRINEAU | REBECCA | 428 | |
| BEARGEON | RACHAEL | 195 | |
| BEASLEY | KATRINA | 289 | |
| BELL | KIONDRA | 101 | $500.00 |
| BELLAMY | EULA | 361 | |
| BELLAMY | SHONTA | 287 | |
| BENSON | BELAN | 9 | |
| BENTON | RENEE | 304 | |
| BESS | THERESSA | 596 | |
| BETHEA | REGINALD | 529 | $500.00 |
| BETHUNE | JUDITH | 456 | |
| BILLINGS | LATONGA | 13 | |
| BLACK | TIFFANY | 436 | |
| BLAKENEY | KASHONTA | 174 | |
| BOETTCHER | KAITLYN | 211 | |
| BOHACHIC | MARY | 521 | |
| BONNEAU | TAMEKIA | 673 | |
| BOSTICK | FAITH | 33 | $500.00 |
| BOWDEN | BOBBIE | 153 | |
| BOYLES | MONAE | 101 | |
| BRADDOCK | CHRISTINA | 79 | |
| BRADLEY | BRITTANY | 121 | |
| BROOKS | ANDREA | 86 | |
| BROOKS | LATESHA | 214 | |
| BROWN | NICOLE | 73 | |

| | | | |
|---|---|---|---|
| BROWN | REGAN | 153 | |
| BROWN | TESTLEY | 19 | |
| BRYANT | SHEKELIA | 305 | |
| BURCH | SHANAY | 27 | |
| BURGESS | CHRISTOPHER | 200 | |
| BURGIO | SAMANTHA | 138 | |
| BURROUGHS | ANGELA | 360 | |
| BUSKEY | LINDA | 587 | $1,000.00 |
| Butler | Shelly | 162 | |
| BYL | SHERRY | 156 | |
| BYRD | REVA | 38 | $500.00 |
| BYRD | VICTORIA | 6 | |
| CAGE | ADRIAN | 392 | |
| CAIN | KATRINA | 8 | |
| CAIN | TANZANIA | 169 | |
| CAINE | BLAETEN | 211 | |
| CALCUTT | KAREN | 638 | |
| CAMPBELL | HEIDI | 527 | |
| CAPOTOSTI | JOSEPHINE | 126 | |
| CARANO | VIRGINIA | 74 | |
| CARRAWAY | DEBBIE | 301 | |
| CARTER | HEIDI | 286 | |
| CASEY | KATISHA | 208 | |
| CASILLAS | LORIE | 36 | |
| CHANDLER | DECOSHA | 250 | $500.00 |
| CHANDLER | RACHEL | 52 | |
| CHARLES | FARRAH | 44 | |
| CHARLES | LATOYA | 198 | |
| Chavis | Kimberly | 412 | |
| COE | THELMA | 52 | |
| COKER | KRYSTIE | 352 | |
| CONKLIN | LESLIE | 60 | |
| COTTINGHAM | ANGELA | 209 | |
| COVINGTON | LTOYA | 93 | |
| COX | MARY | 25 | |
| CRAFT | TAMMY | 347 | |
| CRAWFORD | DEBORA | 266 | |
| CRAWFORD | KATHRYN | 111 | |
| CRUZ | MONICA | 196 | |
| CUMMINGS | TONYA | 298 | |
| DANIELS | LYNSIE | 33 | |
| DAVIS | DEBRA | 563 | |
| Davis | Mary | 0 | $500.00 |

| | | | |
|---|---|---|---|
| DAVIS | NANCY | 178 | |
| DAVIS | TIFFANY | 9 | |
| DEAL | KELLY | 70 | |
| DESAI | NIRALEE | 673 | |
| DIGGS | DAVONDA | 64 | |
| DORSEY | DENETRIC | 27 | |
| DOUGLAS | LANEISHA | 281 | |
| DOUGLAS | ROBYN | 96 | |
| DOWLEY | BETTY | 363 | |
| DRAKE | MISTY | 144 | |
| DUBOSE | TAYLOR | 228 | |
| DUDLEY | SUBRENA | 230 | |
| DUKE | ANGEL | 29 | |
| DUNSON | PATRICE | 148 | |
| DYER | MEGAN | 7 | |
| EASTERLING | ASHLEY | 239 | |
| EIDSON | ALEXANDER | 732 | |
| EIDSON | CAMERON | 191 | |
| ELKINS | JENNIFER | 106 | |
| ELLIOTT | SHANNON | 383 | |
| ELVIS | BRITTANY | 177 | |
| EVANS | BETTY | 165 | |
| EVANS | HAYLEE | 108 | |
| EVANS | NIVEA | 466 | |
| EVANS | SOYNIA | 344 | |
| FARMER | CEDRICK | 61 | |
| FEASTER | LATASHA | 104 | |
| FELDER | SHIRLEY | 385 | |
| FELDER | TYRONE | 199 | |
| FELIX | KEONDRA | 336 | |
| FERRELL | MILTON | 48 | |
| FERRERA | AALIYAH | 65 | |
| FLORES | JENSINE | 212 | |
| FLOYD | HELGA | 190 | |
| FLOYD | TIARA | 312 | |
| FOGAN | JACQUELINE | 315 | |
| FORD | MICHELLE | 39 | |
| FOXWORTH | MARGARET | 220 | |
| FRAZIER | MARTHA | 220 | |
| FRAZIER | TASHA | 10 | |
| FREEMAN | BRITTANY | 39 | |
| FRYAR | DIANA | 258 | |
| FULLARD | SHARONA | 172 | $500.00 |

| | | | |
|---|---|---|---|
| FULWOOD | KAREN | 2 | |
| FUNDERBURK | AUNDRA | 11 | |
| FUNK | LATRICE | 464 | |
| GADDY | SARA | 109 | |
| GADSON | EBONY | 261 | $500.00 |
| GAMBLE | THASALENE | 393 | |
| GARRIS | J'NIYA | 130 | |
| GASKINS | HANNAH | 51 | |
| GASKINS | JERNASIA | 403 | |
| GAYMON | KADEIDRE | 83 | |
| GEORGE | LASHAWN | 191 | |
| GEROGE | TISHEKA | 187 | |
| GOODMAN | WILLIE | 80 | |
| GOODYEAR | METRO | 306 | |
| GOULD | MICHELE | 65 | |
| GRAHAM | STEPHANIE | 139 | |
| GRAHAM | TANISHA | 292 | |
| GRAY | BRIDGET | 140 | |
| GRAY | MELISSA | 170 | |
| GREEN | BRIANNA | 46 | |
| HALL | ANNE | 110 | |
| HALL | DIANNE | 429 | |
| HALL | LARA | 78 | |
| HALLMAN | TAYLOR | 194 | |
| HAM | ELISABETH | 164 | |
| HAM | REBECCA | 198 | |
| HAMILTON | TRACEY | 552 | |
| HAMLIN | JAKEYLA | 170 | |
| HANNA | MARCALA | 305 | |
| HARLEY | SEDONIA | 412 | |
| Harper | Stephanie | 78 | |
| HARRELL | ASHLEY | 51 | |
| HARRELSON | JOYCE | 503 | |
| HARRISON | NATALIE | 59 | |
| HARTLEY | JACQUELINE | 89 | |
| HASELDEN | VICKY | 144 | |
| HECKER | ADRIANA | 192 | |
| HIGBE | CRYSTAL | 437 | |
| HILBURN | ERICA | 74 | |
| HILL | COURTNEY | 304 | |
| HILL | JOANNA | 5 | |
| HINES | TEAIRA | 432 | |
| HODGES | RACHEL | 144 | $500.00 |

| | | | |
|---|---|---|---|
| HOPKINS | TAYLOR | 173 | |
| HOWARD | CHARLES | 163 | |
| HOWARD | SHALANDA | 72 | |
| HOWE | ELLEN | 57 | |
| HUBBARD | GAIL | 62 | |
| HUBBARD | NICOLE | 194 | |
| HUCKS | BRANTLEY | 222 | |
| HUGGINS | MICHELIN | 249 | |
| HUTCHINGS | JENNIE | 55 | |
| HUTCHINS | MEGHIN | 231 | |
| INGRAM | LANISHIA | 49 | |
| IVEY | TIFFANY | 113 | |
| JABERG | HEATHER | 172 | |
| JACKSON | ALYSIA | 361 | |
| JACO | WHITNEY | 340 | |
| JAMES | TONYA | 19 | |
| JENNINGS | TAMEIKA | 474 | |
| JENSEN | KAREN | 28 | |
| JETT | CRYSTAL | 671 | $500.00 |
| JETT | STANIELLE | 243 | |
| JEWELL | SARAH | 11 | |
| JOHNSON | BRANDEN | 462 | |
| JOHNSON | IEASHA | 262 | |
| JOHNSON | JOHN | 540 | |
| JOHNSON | TYNETTE | 278 | |
| JOHNSON | VALERIE | 467 | |
| JOHNSON | VALSHONDA | 111 | |
| JONES | LANORALENE | 72 | |
| JOYED | RACHELL | 591 | |
| KEITH | KAYLA | 24 | |
| KERRICK | VALERIE | 74 | $500.00 |
| KERSON | SHANEAQUIA | 138 | |
| KING | TAMARA | 324 | |
| KLEIN | CHERISE | 149 | |
| KNOWLIN | TYSHEE | 55 | |
| LADSON | JACQUANNA | 323 | |
| LAMBERT | JAMILA | 181 | |
| LAW | TYESHA | 494 | |
| LAYTON | NICOLE | 148 | |
| LEE | JAISON | 12 | |
| LEE | LACEY | 211 | |
| LEE | MATTHEW | 508 | |
| LEONARD | LAUREN | 41 | $500.00 |

| | | | |
|---|---|---|---|
| LESANE | VALERIE | 524 | |
| LESTER | KATHERINE | 432 | |
| LEWIS | AMBER | 715 | |
| LEWIS | CHANDA | 9 | |
| LILJA | BRITTANY | 180 | |
| LIVINGSTON | DIANE | 121 | |
| LOCKLEAR | COURTNEY | 191 | |
| LOWRIMORE | DELTAH | 533 | |
| MACGREGOR | DONNA | 16 | |
| MACK | GEORGE | 733 | |
| MACK | NATASHA | 413 | |
| MANESS | KIMBERLY | 524 | |
| MARSHALL | SHANTE | 193 | |
| MARTIN | KIMBERLY | 76 | |
| MATA ABARCA | ALFREDO | 462 | |
| MATHIS | ANNA | 249 | |
| MATTHEWS | CARRIE | 510 | |
| MAYNARD | NATALIE | 275 | |
| MCBRIDE | ALLISON | 180 | |
| MCBRIDE | JASMINE | 107 | |
| MCCLAM | SABRINA | 265 | |
| MCCORMICK | ROSIE | 139 | |
| MCCUTCHEON | BRIDGET | 634 | |
| MCDOWELL | SAVANNAH | 60 | |
| MCDUFFIE | LAKESHA | 46 | |
| MCGRIFF | ALEXUS | 144 | $500.00 |
| MCKINNEY | AUGUSTA | 122 | |
| MCKISSICK | LAKENYA | 291 | |
| MCKITHEN | SONEE | 155 | |
| MCLAUGHLIN | BRIDGET | 7 | |
| MCLEAN | MARTHA | 152 | |
| MCMILLAN | MELISSA | 3 | |
| MCMILLON | RENEE | 249 | |
| MCNEAL | ELISHA | 587 | |
| MCPHAIL | LISA | 102 | |
| MCWHITE | CASANDRA | 129 | $500.00 |
| MELINE | ALEXIS | 273 | |
| MESSENGER | JEANETTE | 602 | |
| MILES | ALEXIS | 141 | |
| MILLER | LAKESHIA | 177 | |
| MILLER | PAIGE | 27 | |
| MILLER | RACHEAL | 272 | |
| MILLS | DARLENE | 47 | |

| MITCHELL | KIMEERLY | 167 | |
|----------|----------|-----|---|
| MITCHELL | RUTH JAMES | 16 | |
| MITCHELL | SHONDA | 324 | $1,000.00 |
| MITCHELL | STEPHANIE | 164 | |
| MITCHELL | TIFFANY | 97 | |
| MOONEY | KATHLEEN | 52 | |
| MOORE | ANITA | 488 | |
| MOORE | SHERWENA | 237 | |
| MOORE | TOMMIE | 327 | |
| Morgan | Mandy | 503 | |
| MORRIS | DELORES | 148 | |
| MORROW | SANDIE | 408 | |
| MULLINS | TIERRA | 165 | |
| MURPHY | JOSHUA | 150 | |
| MURPHY | TERRINE | 265 | |
| NANCE | SYLVIA | 135 | |
| NAYLOR | DONNA | 148 | |
| NEDD | DONETTE | 76 | |
| NESMITH | TELCHER | 175 | |
| NEWMAN | CRYSTAL | 77 | |
| NEWTON | ANDREA | 178 | |
| NIVENS | MONIQUE | 664 | |
| NIXON | BRENDA | 312 | |
| OLIVER | ANGELA | 96 | |
| OSBORNE | JANASIA | 180 | |
| OWENS | MARY | 84 | |
| OWENS | TOSHA | 72 | |
| PAGE | ADAM | 169 | |
| PARKER | CARLOTTA | 216 | |
| PARKER | KAREY | 223 | |
| PARKER | SHERI | 209 | |
| PARROTT | SHARON | 192 | |
| PASTORE | JOANN | 174 | |
| PEOPLES | TANGIE | 199 | |
| PERRY | CAROLINE | 490 | $2,500.00 |
| PHILEMON | RICHARD | 54 | |
| PHILLIPS | JASMINE | 94 | |
| PHILLIPS | KIARRA | 483 | |
| PILOT | JENNIFER | 134 | |
| POOLE | NIAIRAH | 50 | |
| POPE | MIKAYLA | 230 | |
| POSTON | GEORGINA | 402 | |
| POTTS | GEORGETTA | 117 | |

| | | | |
|---|---|---|---|
| PRESSLEY | NICOLE | 107 | |
| PRINCE | SOLOMON | 32 | |
| QUARLES HOLMES | MONICA | 614 | |
| RABON | KEISHA | 256 | |
| RADCLIFF | KATTIA | 99 | |
| RAMSEY-HICKS | FELICIA | 187 | |
| RAWLS | QUASHAUNDA | 229 | |
| REAVES | MARESHIA | 255 | |
| REAVES | TAMEIKA | 67 | |
| REDDEN | TAWANDA | 281 | |
| REGISTER | KAREN | 148 | |
| RHODES | DENISE | 9 | |
| RICHARDSON | JUAN | 26 | |
| RING | BARBARA | 171 | |
| ROBBINS | EMMA | 418 | |
| ROBERTSON | DANA | 48 | |
| ROBINSON | ARIANA | 98 | |
| ROBINSON | JANNIESHA | 61 | |
| ROBINSON | KENDRA | 19 | |
| ROBINSON | SHARON | 285 | |
| ROETS | DIANE | 152 | |
| ROGERS | IRVIN | 182 | |
| ROGERS | JANIS | 398 | |
| ROGERS | JUDITH | 631 | |
| ROGERS | RAYMOND | 432 | |
| ROGERS | SHANEKA | 446 | |
| ROGERS | WHITNEY | 46 | |
| ROLLINGS | MICHAEL | 718 | |
| RORLS-SELLERS | TAMIKKA | 323 | |
| ROSE | VELMA | 11 | |
| ROWELL | ALLISON | 206 | |
| RUSH | KEELY | 16 | |
| RUSH | VALERIE | 186 | |
| SASSER | CHARITY | 76 | |
| SCHAMBUREK | TONNIE | 228 | |
| SCHMIDTLEIN | ELIZABETH | 245 | |
| SCOTT | TENIKA | 100 | |
| SEALANDER | GABRIELLA | 12 | |
| SELLERS | ASHLEY | 209 | |
| SHAVERS THOMAS | MIESHA | 49 | |
| SHAW | MAGGIE | 127 | |
| SHAW | MICHAEL | 4 | |
| SHEPPARD | APRIL | 575 | |

| | | | |
|---|---|---|---|
| SHIELDS | DEBORAH | 165 | |
| SHIRD | ROBERTA | 154 | |
| SHORT | ARIELLE | 25 | |
| SIMMONS | CAMESIA | 441 | |
| SIMMONS | JAVORIA | 54 | |
| SIMMONS | MAESHA | 17 | |
| SINGLETARY | ANTOINETTE | 163 | |
| SINGLETARY | DAKAYLA | 67 | |
| SIPES-PACHOL | LESLIE | 452 | |
| SMALL | SHEKITKA | 103 | |
| SMITH | DIANE | 58 | |
| SMITH | KOMIKA | 140 | |
| SMITH | STEVEN | 2 | |
| SMITH | WHITNEY | 293 | |
| SNYDER | TIFFANY | 41 | |
| SOLES | LAYLA | 537 | |
| SPEARS | ANDREA | 164 | |
| SPIRES | JASON | 239 | |
| SPIVEY | WESLEY | 321 | |
| SPRINGER | TINA | 43 | |
| STACKHOUSE | ANNIE | 9 | |
| STAGG | JULIA | 462 | |
| STALLONE | CHRISTINE | 38 | |
| STARKS | MARY | 171 | |
| STEPHENS | BOBBY | 37 | |
| STEWART | GEORGE | 175 | |
| STOKES | LINDA | 202 | |
| STRONG | ALLYSSA | 412 | |
| SULLIVAN | KIMBERLY | 533 | |
| SUSEWELL | KAREN | 100 | |
| TAYLOR | CHARLENE | 340 | |
| TAYLOR | TYESHA | 18 | |
| TEDDER | DEANNA | 207 | |
| THOMAS | BRITTNEY | 129 | |
| THOMAS | CHRISTINA | 382 | |
| THOMPSON | AMY | 110 | |
| THOMPSON | KELLY | 366 | |
| TOALE | KELLY | 406 | |
| TURNAGE | FATIMAH | 152 | |
| UY | VANESSA | 492 | |
| VANHOOSE | ANTHONY | 11 | |
| WACTOR | NAZHAUI | 111 | |
| WALKER | CAROLYN | 4 | |

| | | | |
|---|---|---:|---:|
| WALKER | MARGARET | 72 | |
| WALKER | SHELIA | 34 | |
| WARD | DELTA | 65 | |
| WARREN | JENNIFER | 743 | |
| WASHINGTON | JANAE | 41 | |
| WATERS | THOMASINE | 285 | |
| WATFORD | EMILY | 82 | |
| WATFORD | ISAAC | 136 | |
| WATSON | PEGGY | 95 | |
| WATTS | LIBERTY | 46 | |
| WATTS | PAMELA | 41 | |
| WEATHERLY | JESSICA | 1 | |
| WEBB | AMANDA | 424 | |
| WELCH | CHERYL | 555 | $1,000.00 |
| WHATLEY | OLIVIA | 317 | |
| WHITLOW | RYAN | 14 | |
| WILBURN | AMANDA | 299 | |
| WILHELM | CHERYL | 679 | |
| WILLARD | CASEY | 71 | |
| WILLETT | JENNIFER | 6 | |
| WILLIAMS | LAPORSHA | 586 | |
| WILLIAMS | LASHIKA | 457 | |
| WILLIAMS | LEANNA | 993 | |
| WILLIAMS | NORMAN | 412 | $500.00 |
| WILLIAMS | SHANELL | 119 | |
| WILLIAMSON | REGINA | 484 | |
| WILSON | CAROLYN | 18 | |
| WILSON | CASSANDRA | 7 | |
| WINFIELD | SHARONDA | 66 | |
| WINTERS | BRITTANI | 21 | |
| WINTERS | JESSICA | 328 | |
| WITT | AMANDA | 64 | |
| WOODS | DESTINEE | 38 | |
| WOODS-MORRIS | TONIA | 37 | |
| WRIGHT | EBONY | 134 | |
| ZURAT | STEFANIE | 311 | |
| | | | **TOTAL** |
| | | | $13,500.00 |

# **EXHIBIT 1-B**

## Reserve Fund Claims Form

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Caroline Perry, Plaintiff

vs.                                              Civil Action No. 4:22-cv-00061-JD

McLeod Healthcare Network, Defendant.

## CONSENT TO JOIN LAWSUIT AND CLAIM FORM

To be eligible to be paid money from the Reserve Fund in this Settlement, you must sign and return this Consent to Join Lawsuit and Claim Form by fax to [NUMBER], by email to [CLAIM ADMINISTRATOR] [EMAIL ADDRESS], or mail to [ADDRESS]. Your Consent to Join Lawsuit and Claim Form must be received by [CLAIM ADMINISTRATOR] on or before December 31, 2024 or it will be rejected.

     **1.     Yes, I wish to be a part of the Settlement of this Lawsuit.**  My signature constitutes my consent to become a plaintiff in this Lawsuit and my consent to the terms of the Settlement Agreement in the above-captioned Lawsuit.  By returning this Claim Form, I acknowledge that I fully release and discharge: McLeod Healthcare Network, LLC, McLeod Health, McLeod Regional Medical Center of the Pee Dee, Inc., McLeod Health Cheraw, McLeod Health Clarendon, McLeod Health Dillon, McLeod Loris Seacoast Hospital, McLeod Physician Associates II, and McLeod Occupational Health LLC; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, joint venturer, predecessor, successor, assign, or division of the entities in (i); and (iii) any past, present and/or future, direct and/or indirect, officers, directors, owners, partners, members, trustees, agents, employees, shareholders, representatives, advisors, insurers, attorneys, or employee benefit or welfare programs or plans (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i) or (ii) hereof from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the operative complaint in the Action, which means all claims for allegedly uncompensated overtime, minimum wage, or other unpaid wages, and including liquidated damages, interest, penalties or fines, that were asserted or could have been asserted in this Action under federal, state, or local law, including off-the-clock claims, arising from interrupted or missed meal breaks, through the Settlement Effective Date. This release of the Settlement Claims includes all claims under the Fair Labor Standards Act and all other claims for wages, including the South Carolina Payment of Wages Act, claims under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits arising from the alleged non-payment of wages.

_____        _____
Signature                                              Date

_____        _____
Printed Name                                      Last Four Digits of Social Security Number

_____        _____
Email Address                                     Telephone Number

_____
Street Address

_____    _____    _____
City                                             State                    Zip

_____
Approximate Dates of Employment with McLeod (if known)

# **EXHIBIT 1-C**

# General Release for Service Award Recipients

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between **McLeod Healthcare Network, LLC and its affiliated entities set forth herein** (referred to throughout this Agreement as "McLeod") and the undersigned employee ("Employee"). The term "Party" or "Parties" as used herein shall refer to McLeod, Employee, or both, as may be appropriate.

1. **Recitals.**

This Agreement is made with reference to the following facts:

(a)    On or about January 7, 2022, Maya Wilkes brought a collective action against McLeod, which is pending in the District of South Carolina as *Caroline Perry v. McLeod Healthcare Network, LLC*, Case No. 4:22-cv-00061-JD (the "Lawsuit"). In the Lawsuit, the Plaintiffs assert claims under the Fair Labor Standards Act and the South Carolina Payment of Wages Act;

(b)    Employee previously consented to join the Action as an Opt-In Plaintiff pursuant to 29 U.S.C. § 216(b) and has neither withdrawn his/her consent nor been dismissed by the District Court; and

(c)    There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Employee and McLeod have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Employee has or may have against McLeod Healthcare Network, LLC, McLeod Health, McLeod Regional Medical Center of the Pee Dee, Inc., McLeod Health Cheraw, McLeod Health Clarendon, McLeod Health Dillon, McLeod Loris Seacoast Hospital, McLeod Physician Associates II, and McLeod Occupational Health LLC and/or their direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2. **Consideration/Indemnification for Tax Consequences and Liens.**

(a)    In consideration for Employee signing this Agreement, and complying with its terms and subject to the revocation language below, if any, McLeod agrees to pay a Service Award as set forth in Exhibit C to the global Settlement Agreement reached in this matter (the "Settlement Payment").

(b)    Employee understands and agrees McLeod is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors, and administrators (and Employee's legal representatives of every kind), agrees to indemnify and

1

hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that McLeod or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from McLeod or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)     Any settlement payments made by check set forth in this paragraph will be delivered by the settlement administrator in accordance with the global Settlement Agreement executed on behalf of the collective by the named Plaintiff and her counsel, which is incorporated herein by reference.

### 3.     No Consideration Absent Execution of this Agreement.

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

### 4.     General Release, Claims Not Released and Related Provisions.

(a)     **General Release of All Claims.**     Employee and Employee's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Age Discrimination in Employment Act ("ADEA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Families First Coronavirus Response Act;
- The South Carolina Human Affairs Law, as amended, SC Code Ann. § 1-13-10 *et seq.*;
- The South Carolina Payment of Wages Law, as amended, SC Code Ann. § 41-10-10 *et seq.*;
- The South Carolina Workers' Compensation Retaliation Law, SC Code Ann. § 41-1-80 *et seq.*;
- South Carolina Genetic Information Privacy Act, S.C. Code Ann. § 38-93-10 *et seq.*, as amended;

2

- South Carolina Smokers' Right Law, S.C. Code Ann. § 41-1-85, et seq., as amended;
- South Carolina Bone Marrow Donor Program Leave Provisions, S.C. Code Ann. § 44-43-80 *et seq.*, as amended;
- South Carolina Occupational Safety and Health Act, § 41-15-10 *et seq.*, as amended;
- South Carolina Jury and Witness Duty Leave Provisions, § 41-1-70, as amended;
- South Carolina Volunteer Firefighter and Emergency Medical Services Personnel Job Protection Act, § 6-11-1460, as amended;
- South Carolina provision regarding termination of an authorized worker and replacing with unauthorized alien, S.C. Code Ann. § 41-1-30;
- South Carolina Military Leave/Reemployment Rights

Provisions, § 25-1-10 *et seq.*, as amended;
- South Carolina Illegal Immigration Reform Act, .C. Code Ann. § 41-8-10 *et seq.*;
- South Carolina provision regarding unlawful discrimination against union members, S.C. Code Ann. § 41-1-20;
- South Carolina Right to Work Act, S.C. Code § 41-7-10 *et seq;*
- South Carolina Pregnancy Accommodations Act;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b)    **Claims Not Released.**    Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under McLeod's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(c)    **Governmental Agencies.**    Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

(d)    **Collective/Class Action Waiver and Jury Waiver.**    If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which McLeod or any other Releasee identified in this Agreement is a party, other than the Lawsuit. Similarly, as

3

to any such claim against any Releasee that is not otherwise released, Employee waives Employee's right to a jury trial subject to applicable law.

## 5.    **Publicity**

(a)    Employee agrees not to publicize the terms of this Agreement to any media outlet, social media platform, or law firm website. Nothing contained herein shall be construed to prevent the disclosure of the amount and terms of settlement to the Parties' accountants, auditors, financial advisors, spouses, attorneys, tax authorities, or to any federal, state, or local government agency or court when required by law or court order to do so.

## 6.    **Acknowledgements and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against McLeod, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(a)    Employee also affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee further affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(b)    Employee further affirms that Employee has no known workplace injuries or occupational diseases.

(c)    Employee also affirms that Employee has not divulged any proprietary or confidential information of McLeod and will continue to maintain the confidentiality of such information consistent with McLeod's policies and Employee's agreement(s) with McLeod and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against McLeod for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(d)    Employee further affirms that Employee has not reported internally to McLeod any allegations of wrongdoing by McLeod or its officers, including any allegations of

4

corporate fraud, and Employee has not been retaliated against for reporting or objecting to any such allegations internally to McLeod.

(e)     Employee shall not apply for, or accept, employment or other work engagement (including, for example, as an independent contractor or temporary worker) with McLeod or any Releasee under any circumstances because of, among other things, irreconcilable differences with McLeod.  Employee agrees that, if Employee accepts employment or other work engagement with any Releasee in contravention of this Agreement, such Releasee may terminate Employee's employment or work engagement immediately and Employee shall have no claim against such Releasee, in law or equity, related to such termination (to the fullest extent permitted by law).

(f)     Employee affirms that all of McLeod's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(g)     Employee and McLeod acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

(h)     Employee expressly waives any and all rights and claims that Employee may have for wrongful termination in violation of public policy, breach of contract, or any other statutory, common law, or equitable claim under South Carolina law.

**7.     <u>Governing Law and Interpretation</u>.**

This Agreement shall be governed and conformed in accordance with the laws of South Carolina without regard to its conflict of laws provision.  In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach.  Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.  Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Employee agrees to sign a replacement release in a form provided by McLeod.

**8.     <u>Nonadmission of Wrongdoing.</u>**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**9.     <u>Amendment.</u>**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.**

This Agreement and the global Settlement Agreement referenced herein set forth the entire agreement between the Parties hereto, and fully supersede any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between McLeod and Employee, which shall remain in full force and effect according to their terms. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement and the global Settlement Agreement.

11. **Counterparts and Signatures**.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument.  A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

12. **Mutual Negotiation**.

This Agreement was the result of negotiations between the Parties and their respective counsel.  In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

13. **Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Employee or any party acting on Employee's behalf.

14. **Time to Negotiate and Consider.**

In addition to having the opportunity to negotiate this Release Form, before signing it, through this reference, Employee is advised to consult with an attorney before signing this Release Form. Employee represent that they have carefully read this Release Form and find that it has been written in language that they understand.  Employee has been given 21 days to consider whether to accept this Release Form, and has signed it only after reading, considering and understanding it. If any Employee signs this Release Form before the expiration of that 21-day period, he or she is expressly waiving his right to consider the Release Form for any remaining portion of that 21-day period. The Parties agree that any changes made to this Release Form from the version originally presented to Employee, whether those changes are deemed material or nonmaterial, do not extend the 21-day period Employee has been given to consider this Release Form. If Employee is over 40 years old, Employee may revoke this Agreement for a period of seven (7) calendar days following the day on which Employee signs or enters into this Agreement, and the Agreement is not enforceable until the revocation period has expired. Any

revocation within this period must be submitted, in writing, to Kelly Hurt, Vice President of Human Resources, 2210 Enterprise Dr., Florence, SC 29501, kelly.hurt@mcleodhealth.org, and state, "I hereby revoke my acceptance of our agreement and general release." The revocation must be postmarked or, if personally delivered, received by Kelly Hurt, Vice President of Human Resources, 2210 Enterprise Dr., Florence, SC 29501, kelly.hurt@mcleodhealth.org, or her designee within seven (7) calendar days after Employee signs or enters into this Agreement.

**PLAINTIFF ACKNOWLEDGES THAT PLAINTIFF HAS HAD A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT. PLAINTIFF FURTHER ACKNOWLEDGES THAT PLAINTIFF HAS BEEN ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY PLAINTIFF'S COUNSEL, FALLS LEGAL, LLC AND ANDERSON ALEXANDER, PLLC. AND SO DOING, ENTERS INTO THIS AGREEMENT.**

**PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFF HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**[INSERT NAME]**                              **McLeod Healthcare Network, LLC**


By:_____          By: _____
                                                             Print Name:
                                                             Title:

Date:_____          Date:_____